ROBERT C. BLADES, EVE R. BLADES, JOHN D. BRADSHER, JR., JO ANN BRADSHER, J. MELVILLE BROUGHTON, JR., MARY A. C. BROUGHTON, SAMUEL B. DEES, HELEN DEES, CLARENCE R. DOLBY, JR., VIRGINIA DOLBY, JOHN N. DUNCAN, JR., JEAN C. DUNCAN, R. B. DUNN, DREAMA DUNN, J. ROGER EDWARDS, JR., PATRICIA EDWARDS, T. W. ELLIOTT, JR., MURIEL ELLIOTT, A. D. GURKIN, L. B. HARDISON, MARY L. HARDISON, PAUL A. HOOVER, DOROTHY D. HOOVER, ALBERT M. JENKINS, SUSAN S. JENKINS, DREWRY J. JONES, ELMA JONES, J. LYMAN KISER, ELIZABETH KISER, JOHN C. McCONNELL, JR., LYNDA R. McCONNELL, HUGH L. McMANUS, JR., KAYE C. McMANUS, J. C. MILLSAPS, BETTY S. MILLSAPS, SAM NORTHROP, JR., MARY LOU NORTHROP, J. T. PULLEN, LOIS PULLEN, D. B. VICK, AND MILDRED S. VICK, PLAINTIFFS v. THE CITY OF RALEIGH, NORTH CAROLINA, SEBY JONES, MAYOR AND MEMBER OF THE CITY COUNCIL OF THE CITY OF RALEIGH, NORTH CAROLINA, AND TOM BRADSHAW, JR., GEORGE B. CHERRY, CLARENCE E. LIGHTNER, JESSE O. SANDERSON, ROBERT W. SHOFFNER, AND ALTON L. STRICKLAND, MEMBERS OF THE CITY COUNCIL OF THE CITY OF RALEIGH, NORTH CAROLINA, AND WILLIAMS REALTY AND BUILDING COMPANY, INCORPORATED, DEFENDANTS

No. 71

(Filed 15 March 1972)

**1. Declaratory Judgment Act § 1; Municipal Corporations § 30— validity of zoning ordinance**

A suit to determine the validity of a city zoning ordinance is a proper case for a declaratory judgment, and the owners of property in the adjoining area affected by the ordinance are parties in interest entitled to maintain the action. G.S. 1-254.

**2. Rules of Civil Procedure § 56— summary judgment**

A summary judgment may be entered, when otherwise proper, upon the motion of either the plaintiff, G.S. 1A-1, Rule 56(a), or the defendant, G.S. 1A-1, Rule 56(b), in an action for a declaratory judgment.

**3. Rules of Civil Procedure § 56— summary judgment against moving party**

When appropriate, summary judgment may be rendered against the party moving for such judgment. G.S. 1A-1, Rule 56(c).

**4. Declaratory Judgment Act § 2— validity of zoning ordinance — summary judgment**

Summary judgment is proper in an action seeking a declaratory judgment as to the validity of a zoning ordinance where there is no substantial controversy as to the facts disclosed by the evidence, but the controversy is as to the legal significance of those facts.

Blades v. City of Raleigh

**5. Municipal Corporations § 30— police power — zoning ordinance**

The police power, upon which zoning ordinances must rest, permits restriction of the owner's use of a specific tract when the legislative body has reasonable basis to believe that it will promote the general welfare by conserving the values of other properties and encouraging the most appropriate use thereof.

**6. Municipal Corporations § 30— amendment of zoning ordinance**

A city may, from time to time, amend its zoning ordinance so as to transfer an area from one use district to another, the enactment of a zoning ordinance not being a contract by the city with property owners to maintain the zoning pattern thereby established. G.S. 160-176.

**7. Municipal Corporations § 30— rezoning — changed conditions — increased traffic on abutting road**

Increased flow of traffic along a road abutting a 5-acre tract of land is not a changed condition which would warrant rezoning of the tract from single family residential to a less restrictive classification, the increased traffic being due largely to residential construction in the area and having been contemplated when the property was originally zoned and there being nothing to show that the increased traffic affects the 5-acre tract in a manner or degree different from all other properties in the area which remain zoned and used for single family residences.

**8. Municipal Corporations § 30— rezoning — change of conditions — abutting property**

Contention that rezoning of a 5-acre tract from a classification permitting only single residences to a classification permitting townhouse apartments was warranted by the commercial rezoning of abutting property is without merit, the record showing that there has been no rezoning of abutting properties but only that there has been a relatively insignificant nonconforming use of one abutting landowner's property which was in existence when the original zoning ordinance was adopted.

**9. Municipal Corporations § 30— rezoning — purported need for townhouses**

Purported need for additional luxurious townhouses in Raleigh is not a change in condition which would warrant the rezoning of a 5-acre tract from a single family residential classification to a classification permitting townhouses, there being nothing in the record to show a need for such land use in the area where the land is located.

**10. Municipal Corporations § 30— rezoning — unsuitability for single family residences**

In a hearing upon an application for the rezoning of a 5-acre tract of land from single family residential to a less restrictive classification, a statement by the applicant's president that the tract is not suitable for "the type of housing residence that we have been building" in the surrounding area is not a basis for finding that this particular property is not suitable for single family residential purposes.

**11. Municipal Corporations § 30— spot zoning**

A zoning ordinance, or amendment, which singles out and re-classifies a relatively small tract owned by a single person and surrounded by a much larger area uniformly zoned, so as to impose upon the small tract greater restrictions than those imposed upon the larger area, or so as to relieve the small tract from restrictions to which the rest of the area is subjected, is "spot zoning" and is beyond the authority of the municipality, in the absence of a clear showing of a reasonable basis for such distinction.

**12. Municipal Corporations § 30— spot zoning**

Ordinance rezoning 5 acres of land from R-4 classification (single family residences) to a less restrictive classification constituted "spot zoning," where the rezoned property is surrounded by a very large area classified R-4 and extensively developed by the construction and occupancy of single family residences, and the record discloses no reasonable basis for granting the owner of the 5-acre tract freedom from restrictions imposed upon the owners of other properties in the surrounding area.

**13. Municipal Corporations § 30— contract zoning — specified use of property**

A municipal ordinance rezoning a 5-acre tract of land from an R-4 classification to a less restrictive R-6 classification constituted unlawful "contract zoning," where there is nothing in the record to indicate that the city council contemplated the opening of the 5-acre tract to all uses permissible under the R-6 classification, and it is apparent that the city council's action was based on its approval of the applicant's plans to construct specifically described townhouses on the property.

APPEAL by plaintiffs from *Clark, J.,* at the 12 April 1971 Regular Civil Session of WAKE, heard prior to determination by the Court of Appeals, docketed and argued as Case No. 113 at Fall Term 1971.

This is a suit for a declaratory judgment to determine the validity of Ordinance No. (1970) 28 ZC 91 of the City of Raleigh, insofar as it rezones from a Residential 4 (R-4) classification to a Residential 6 (R-6) classification approximately five acres owned by Williams Realty & Building Company, Inc., hereinafter called Williams, lying between Lassiter Mill Road and Old Lassiter Mill Road. The plaintiffs appeal from a summary judgment granted upon motion of Williams adjudging the ordinance valid.

The complaint alleges: The plaintiffs are owners of single family residences located across the street from and in other

locations near the property in question (Williams property);
when Williams acquired its property, it was zoned R-4; and it
was and is adaptable and usable for uses permitted in R-4 dis-
tricts (single family residences); town houses (other than on
tracts of fifty acres, or more), apartment houses, hospitals, sani-
tariums and rest homes are not permissible uses in R-4 districts
but are permissible uses in R-6 districts; Williams having peti-
tioned for the rezoning of its property from R-4 to R-6 and the
plaintiffs and others having protested, the Planning Commis-
sion of the City and the City Council, meeting jointly, conducted
a hearing, following which the Council adopted the ordinance;
the ordinance constitutes unlawful spot zoning, is contrary to
the comprehensive plan of the city, is arbitrary and capricious,
does not preserve but diminishes the value of property in the
same general area, denies the plaintiffs the equal protection of
the laws, deprives them of their property without due process
of law, constitutes unlawful contract zoning, having been
adopted by the Council in exclusive reliance upon Williams'
representations as to the specific use it would make of the
property, is not supported by any change in the condition of
the area or by any evidence of need for construction of apart-
ment houses in the area; and for these and other reasons the
ordinance is invalid.

The answer of Williams denies the asserted bases of in-
validity of the ordinance. It alleges that the Council considered
the matter and that it recited in the ordinance itself the things
it considered. The answer incorporates the application filed by
Williams, a transcript of the oral presentations at the hearing
before the City Council, excerpts from the minutes of the meet-
ing of the Council and the ordinance itself.

The answer of the city and members of the City Council
admits the adoption of the ordinance in question but denies its
invalidity and the alleged bases therefor set out in the complaint.

At the hearing upon its motion for a summary judgment
dismissing the action, Williams offered in evidence, "merely to
show what the Council had before it at the time the request for
zoning was considered," certain exhibits, including a map of the
area of which the Williams property is a part, the application
of Williams for rezoning and a transcript of statements made
at the hearing before the City Council. Counsel for the plaintiffs
offered in evidence, in opposition to the motion for summary

judgment, excerpts from minutes of various meetings of the City Council and of the Planning Commission, contending that there were genuine issues of material fact, no specification of these being set forth in the record.

The following facts, appearing in the record, are not in controversy:

By Zoning Ordinance 765-ZC-42, adopted 20 October 1958, a very extensive area was classified R-4. In the intervening years, this entire area has been extensively developed by the construction and occupancy of single family residences, each on a substantial lot. It is, presently, one of the more desirable residential areas in the city. The five acre Williams tract is approximately in the center of it.

At the time the 1958 Ordinance was adopted, and for many years prior thereto, there was in operation on a small tract immediately between the Williams property and the north bank of Crabtree Creek a water powered grist mill, known as Lassiter's Mill, an historic landmark of the city and vicinity. There was also in operation on a small area, adjoining both the Lassiter Mill tract and the Williams property, an antique shop and, associated therewith, a small woodworking plant called the Lassiter Lumber Company, manufacturing such items as children's sandboxes, dog houses, and basketball goals. The Lassiter Mill site was zoned I-2 (industrial) and the Lassiter Lumber Company operation and antique shop were continued as a nonconforming use in the R-4 district.

A few months thereafter, the Lassiter Mill burned. Its owner proposed to rebuild it. The Planning Commission recommended, and the City Council adopted, an ordinance changing this property to the R-4 classification, except the mill site itself, approximately one acre, which was left in the I-2 classification to permit rebuilding of the mill. At that time (1959), the Planning Commission reported to the City Council, as a basis for its recommendation, "it [was] felt that this was one of the best residential sections in the city and to allow the existing zoning [Industrial-2] would do great damage to the surrounding area."

On 19 May 1969, another application was filed to rezone "approximately one acre of land at the Old Lassiter Mill site" from the I-2 to the R-4 classification. The Planning Commission recommended to the City Council that this request be denied

and its recommendation was followed, the minutes showing: "Although this request would represent a logical change of zoning to make this area conform to the overall development of the area, the commission recalled that in 1959 this area was allowed to remain in order for the owner to have an opportunity to rebuild the mill; and that present plans for the area, which indicate the city's purchase of this property for a park, would make the rezoning appear to be a deliberate attempt to devalue the property for future purchase."

The Lassiter Lumber Company operation and antique shop continue as a nonconforming use in the R-4 district.

The Williams property is a five acre tract bounded on the South by the Lassiter Mill and the Lassiter Lumber Company properties, on the West by Old Lassiter Mill Road, on the East by Lassiter Mill Road and on the North by a proposed but unopened extension of Marlowe Road.

Lassiter Mill Road, running on North beyond the Williams property for a considerable distance, leads to the North Hills Shopping Center, constructed after the adoption of the Zoning Ordinance of 1958, which construction, together with the construction of the many homes in this area, has substantially increased the traffic on Lassiter Mill Road.

Williams was a substantial factor in the development and sale of many lots in this general area, now occupied by single family residences, and continues to own other acreage and lots therein.

On 1 May 1967, as shown in the minutes, the City Council adopted a resolution providing:

"WHEREAS, the complete zoning procedure heretofore followed has never been officially adopted by the City Council * * *

Now, THEREFORE, BE IT RESOLVED * * *

"That the following procedure be followed with reference to filing rezoning applications and in holding zoning hearings: * * *

"9. The Council will not rely upon specific use or plan proposals in its determinations, except in case of a require-

ment by the Council for special exceptions, such as shopping center plan approval. The arguments must be based on the need to change the zoning map in accordance with the comprehensive plan or to amend the plan for the benefit of the neighborhood or city, because of changed conditions."

The application filed by Williams for the rezoning of its property from R-4 to R-6 contains the following questions and answers, among others:

"15. What changed or changing conditions make the passage of this amendment necessary?

1. Traffic conditions along Lassiter Mill Road.

2. Commercial Zoning of abutting property.

3. Need for some 20 ultra luxurious townhouses in Raleigh."

(As above noted, there has been no commercial zoning of abutting property since this area was classified R-4 by the ordinance of 1958. The Lassiter Mill is not in operation and the Lassiter Lumber Company operation and antique shop are recognized as a nonconforming use in an R-4 district.)

"16. Describe briefly whether all the uses permitted by the proposed amendment would be appropriate in the area concerned:

"The zoning change from R-4 to R-6 is essentially one of greater density: to allow more than a single dwelling, the use of the area for a sanitarium, rest home, or temporary Christmas tree sales [permitted in R-6 but not in R-4] would be appropriate but not desirable by the owner."

*    *    *    *

"18. Describe whether other areas designated for similar development in the vicinity of the subject property are likely to be so developed if the proposed amendment is adopted, and whether the designation for such future development should be withdrawn from such areas by further amendment of the Zoning Map.

"The area is unique in geographical location, the concept is reasonably new, and this applicant does not know of similar proposed developments in the area.

"19. Other circumstances which justify the amendment?

"The type of dwellings available in this area is limited. This amendment would allow comparable housing in style and quality without problems of house and lawn maintenance to those who would like to live in the neighborhood."

At the hearing before the City Council upon the Williams application, the attorney for Williams stated:

"In this particular piece of property, you've got a unique piece of land because of the geographical location. * * * [T]his is in effect an island. * * * The property lying immediately * * * west of the Old Lassiter Mill Road is still being developed by Williams Realty & Building as part of Williamsborough.

"Under the proposed zoning which is from R-4 to R-6, you can have additional items, they are a sanitorium, a hospital, a rest home. Mr. Williams doesn't feel this is the proper development, and what he proposes to put in there are luxury apartments. * * * The diagram, immediately back of the Mayor there, is a diagram showing the ground layout site plan of this particular thing, which I think gives a better idea than I could describe it to you."

A spokesman for the proposal, introduced to the Council by the attorney for Williams, stated:

"This is 20 units on approximately 5 acres. No increase in density, basically. All of the units would be inwardly oriented: facing a landscaped parking court yard. The court yard would contain approximately 50 parking spaces and would be lushly landscaped with trees and various types of plant material within the parking areas themselves. It is anticipated that a full-time gardener would be provided with this development. We are maintaining a buffer of trees between Lassiter Mill Road of approximately 95 feet and between Old Lassiter Mill Road of approximately 60 feet."

The architect for the proposed project, speaking in support of the application, said:

"Basically, I can only emphasize the character of this insofar as its individuality as an enclosed development with

Blades v. City of Raleigh

no presentation on the street. Furthermore, a quick analysis of the value of the property which is approximately $115,000 to $120,000, divided by 20 units, brings in a ground cost which is at least three times the average so-called town house which is—should be called garden apartment. Therefore, there is no question but that the investment requirement here would be substantial units rather than minimum units, and it is geared entirely for people who live in houses and want to move to developments like this. That [sic] have large rooms and accommodate the furniture which they have had all their lives."

The president of Williams, in rebuttal of statements by protestants, said:

"Since that time [15 or 16 years ago] we have developed the some 300 acres of land, which originally comprised the Drewry property, and we have transposed this land into two subdivisions, Drewry Hills and Williamsborough, which I think are the equal to any subdivision in this town. I now find myself with this 5 acres of land along Lassiter Mill Road that is unsuitable to build the type of housing residence that we have been building in these two subdivisions we mentioned before, and I am here to ask you all to allow me to develop this property as I think it should be developed. I have talked to land planners, architects, engineers and realtors, and without exception, they are all in agreement that the property should be developed for high class high rental town house apartments."

Following the hearing, the Planning Commission recommended approval of the application, saying:

"The tract proposed is about 5 acres in size. We felt that it was not an illogical extension of the growth of the city and it would not necessarily involve, detrimentally, the neighbors in the single family homes to the North and East, and, therefore, the recommendation of the Planning Commission was for approval. * * * We felt that this particular development would have to be controlled to some extent, but that on the merits of this instance that it would not be detrimental to the neighborhood. * * * This particular proposal will not increase the density. * * * They [the proposed buildings] will be closer together but it would not increase the density on the property."

Following the recommendation of the Planning Commission, the City Council adopted the ordinance in question unanimously.

Other than the above quoted statement of the president of Williams to the City Council at the hearing, there is nothing in the record to suggest that the Williams property is not suitable for single family residences.

The ordinance under attack contains the following recital in its preamble:

"WHEREAS, in the passage of this ordinance the City Council of the City of Raleigh has specifically considered each of the following:

"(a) A comprehensive zoning plan of the City as evidenced by past actions of the City Council.

"(b) The officially adopted thoroughfare plan as the same will lessen traffic congestion.

"(c) The 'Land Development Plan 1980' of the City of Raleigh.

"(d) The securing of safety from fire, panic and other dangers.

"(e) The promotion of the public health, public safety, public morals and public welfare.

"(f) The providing of adequate light and air.

"(g) The prevention of overcrowding of land and avoidance of undue concentration of population.

"(h) The facilitation and availability of transportation.

"(i) The facilitation and availability of water, sewage, schools, parks and other public requirements.

"(j) The character of the district and its peculiar suitability for particular uses.

"(k) The conservation of land and building values and the encouragement of the most appropriate use of land in and around the city."

The ordinance then recites that the council found as a fact that the adoption of the ordinance "will serve to promote, preserve and is consistent with all considerations mentioned in (a) through (k) above."

The superior court set forth in its judgment many recitals which are not denominated "Findings of Fact," including the following:

"That it appears to the Court that said pleadings raise only a question of fact and there is no genuine issue as to any material fact * * *

"It appearing to the Court * * * that the City of Raleigh has maintained a Comprehensive Zoning Plan * * *

"It further appearing to the Court that in addition to its own collective knowledge and expertise, the Council has the advice of a Planning Commission * * *

"That among the matter presented for consideration by the City Council * * * were the following:

"a) That the land to be rezoned is a 5-acre parcel.

"b) The traffic situation along Lassiter Mill Road.

"c) The industrial zoning and commercial usage of the adjoining property.

"d) The right of an owner of property, which is zoned R-6, to use the property for a sanitorium, rest home or for temporary sale of Christmas trees.

"e) That there would be no increase in traffic on the road net around the property as a result of any of the uses permitted in an R-6 zone as compared with the uses permitted in an R-4 zone.

"f) The adequacy of utilities in the area for any use in either an R-4 or R-6 zone.

"g) The protection of surrounding R-4 areas from adjacent industrial or commercial usage by creation of a buffer R-6 zone.

"h) That other R-6 development in the area as a result of this ordinance would be possible but unexpected because of the unique nature of the subject parcel.

"i) The opinion of the Planning Commission that adoption of this ordinance was not an illogical extension of the growth of the city and would not necessarily involve detrimentally the neighbors and single-family homes.

"j) That Lassiter Mill Road had been relocated to its present location since this parcel was zoned R-4, which relocation, together with the retention of the Old Lassiter Mill Road rendered the subject parcel an island.

"k) That the subject parcel is an island surrounded by Old Lassiter Mill Road, Marlowe Road, heavily traveled Lassiter Mill Road, a parcel of land in nonconforming commercial use, and a parcel zoned Industrial 2.

"l) That R-4 zoning permits townhouse apartments, as does R-6 zoning, except that the landowner is required to have a fifty-acre parcel under the R-4 zone.

"m) That use of the property within the R-6 classification would produce an increase in traffic on the roads now around the property of approximately 1.8 per cent over the volume of traffic presently existing; with the property in its state of non-use.

"n) That the proliferation of driveways on the road net through use of the property for single-family dwellings within the R-4 classification would increase congestion of the traffic flow.

"o) That the change of the property to the R-6 classification would create no problem so far as provision of adequate light, air, privacy, utilities or fire protection.

"p) The issue of whether or not the rezoning would constitute 'spot zoning.'

"q) That the Planning Commission had attempted to coordinate the facts in this rezoning situation with the Comprehensive Zoning Plan."

The court then recited in its judgment fifteen "FINDINGS OF FACT," including:

"7. That subsequent to the zoning of this property as R-4, that North Hills, a regional shopping center, has been

developed on Lassiter Mill Road, creating a large volume of traffic on Lassiter Mill Road.

\*   \*   \*   \*

"15. That the ordinance (28-ZC-91) states that, in the passage of this ordinance, the City Council of the City of Raleigh had given consideration to the following:

[The recitals set forth in the preamble of the ordinance as above quoted.]

The court then set forth in its judgment its conclusions of law, including the following:

"(2) The City of Raleigh has at all times maintained a Comprehensive Plan for zoning \* \* \* and a zoning map in conformity therewith.

"(3) The 5-acre tract which is the subject of this legislative enactment is not best suited for development within the R-4 classification.

"(4) The City Council \* \* \* had reasonable grounds upon which to conclude that enactment of the Ordinance \* \* \* would serve the purposes of G.S. 160-174 \* \* \*

"(5) Ordinance \* \* \* was duly and validly adopted \* \* \* after due notice and public hearing by unanimous vote of the Council of the City of Raleigh in accordance with the Charter and Code of the City of Raleigh, the General Statutes of North Carolina, the Constitution of North Carolina and the Constitution of the United States.

"(6) The City Council \* \* \* did not act arbitrarily or capriciously but its action was in good faith, was reasonable and was in accord with its Comprehensive Zoning Plan.

"(7) Ordinance (1970) 28-ZC-91 bears a reasonable and substantial relation to the public safety, health, morals, comfort and general welfare."

The court thereupon adjudged that the motion of Williams for summary judgment be granted and that the ordinance was adopted in accordance with law and is valid and the plaintiffs are not entitled to the relief prayed for in the complaint.

The plaintiffs excepted to and assign as error all the foregoing recitals, findings of fact, conclusions of law and adjudications contained in the judgment.

*John V. Hunter III for plaintiffs.*

*Broxie J. Nelson and Fred P. Baggett for the City of Raleigh.*

*Bailey, Dixon, Wooten & McDonald by Wright T. Dixon, Jr., and John N. Fountain for Williams Realty and Building Company.*

LAKE, Justice.

[1] A suit to determine the validity of a city zoning ordinance is a proper case for a declaratory judgment. G.S. 1-254; *Woodard v. Carteret County,* 270 N.C. 55, 153 S.E. 2d 809. The plaintiffs, owners of property in the adjoining area affected by the ordinance, are parties in interest entitled to maintain the action. *Jackson v. Board of Adjustment,* 275 N.C. 155, 166 S.E. 2d 78; *Zopfi v. City of Wilmington,* 273 N.C. 430, 160 S.E. 2d 325. The propriety of a summary judgment in such action is governed by the same rules applicable to other actions. G.S. 1A-1, Rules 56(a) and (b), and 57.

[2, 3] A summary judgment may be entered, when otherwise proper, upon the motion of either the plaintiff, Rule 56(a), or the defendant, Rule 56(b), in an action for a declaratory judgment. When appropriate, summary judgment may be rendered against the party moving for such judgment. Rule 56(c). Summary judgment may be entered, upon such motion, when there is no genuine issue as to any material fact and either party is entitled to a judgment as a matter of law. Rule 56(c). Upon the making of a motion for summary judgment, it is incumbent upon the adverse party resisting such procedure to set forth specific facts showing that there is a genuine issue for trial. Rule 56(e). Here, the defendant Williams moved for summary judgment and neither the plaintiffs nor the city made such showing of the existence of a genuine issue of fact for trial. The record discloses none. In *Kessing v. National Mortgage Corp.,* 278 N.C. 523, 180 S.E. 2d 823, we said:

"The purpose of summary judgment can be summarized as being a device to bring litigation to an early de-

Blades v. City of Raleigh

cision on the merits without the delay and expense of a trial where it can be readily demonstrated that no material facts are in issue. Two types of cases are involved: (a) Those where a claim or defense is utterly baseless in fact, and (b) those where only a question of law on the indisputable facts is in controversy and it can be appropriately decided without full exposure of trial. * * * [U]nder Rule 56 the court may receive and consider various kinds of evidence. * * * Evidence which may be considered under Rule 56 includes admissions in the pleadings, depositions on file, answers to Rule 33 interrogatories, admissions on file whether obtained under Rule 36 or in any other way, affidavits, and any other material which would be admissible in evidence or of which judicial notice may properly be taken. * * * Oral testimony may also be received by reason of Rule 43(e)."

[4] Here, there is no substantial controversy as to the facts disclosed by the evidence. The controversy is as to the legal significance of those facts. Such controversy as there may be in respect of the facts presents questions of fact for determination by the court. See: *Allred v. City of Raleigh,* 277 N.C. 530, 178 S.E. 2d 432; *Zopfi v. City of Wilmington, supra; Armstrong v. McInnis,* 264 N.C. 616, 142 S.E. 2d 670.

The present is, therefore, a proper case for summary judgment determining the validity of Ordinance (1970) 28-ZC-91 of the City of Raleigh. We hold that the ordinance is invalid for the reasons hereinafter set forth and remand this proceeding to the Superior Court of Wake County for the entry of a summary judgment so declaring.

The record supports the conclusion of the superior court that the city has a comprehensive plan for zoning. See, *Allred v. City of Raleigh, supra.* G.S. 160-174 provides that municipal zoning regulations "shall be made in accordance with a comprehensive plan * * * and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout the municipality." This statute, obviously, does not contemplate that the zoning pattern must be, or should be, designed to permit each individual tract of land to be devoted to its own most profitable use, irrespective of the surrounding area.

[5] The whole concept of zoning implies a restriction upon the owner's right to use a specific tract for a use profitable to him but detrimental to the value of other properties in the area, thus promoting the most appropriate use of land throughout the municipality, considered as a whole. The police power, upon which zoning ordinances must rest, permits such restriction upon the right of the owner of a specific tract, when the legislative body has reasonable basis to believe that it will promote the general welfare by conserving the values of other properties and encouraging the most appropriate use thereof. *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303; *Schloss v. Jamison*, 262 N.C. 108, 136 S.E. 2d 691; *Helms v. City of Charlotte*, 255 N.C. 647, 122 S.E. 2d 817; *In Re Appeal of Parker*, 214 N.C. 51, 197 S.E. 706, app. dis., 303 U.S. 569, 59 S.Ct. 150, 83 L.Ed. 358; *State v. Roberson*, 198 N.C. 70, 150 S.E. 674.

As the Supreme Court of the United States, speaking through Mr. Justice Sutherland, said in *Village of Euclid v. Ambler Realty Co., supra:*

"With particular reference to apartment houses, it is pointed out that the development of detached house sections is greatly retarded by the coming of apartment houses, which has sometimes resulted in destroying the entire section for private house purposes; that in such sections very often the apartment house is a mere parasite, constructed in order to take advantage of the open spaces and attractive surroundings created by the residential character of the district. * * * Under these circumstances, apartment houses, which in a different environment would be not only entirely unobjectionable but highly desirable, come very near to being nuisances."

[6] Quite clearly, the city may, from time to time, amend its zoning ordinance so as to transfer an area from one use district into another, the enactment of a zoning ordinance not being a contract by the city with property owners to maintain the zoning pattern thereby established. *Zopfi v. City of Wilmington, supra; Walker v. Elkin*, 254 N.C. 85, 118 S.E. 2d 1; *Marren v. Gamble*, 237 N.C. 680, 75 S.E. 2d 880. G.S. 160-176 specifically authorizes amendments changing the boundaries of zoning districts.

G.S. 160-175 provides, "The legislative body of such municipality shall provide for the manner in which such regulations and restrictions and the boundaries of such districts shall be * * * from time to time amended, supplemented or changed." By resolution of the City Council, the City of Raleigh has provided:

"That the following procedure be followed with reference to filing rezoning applications and in holding zoning hearings:

*   *   *   *

"9. The Council will not rely upon specific use or plan proposals in its determinations, except in case of a requirement by the Council for special exceptions, such as shopping center plan approval. The arguments must be based on the need to change the zoning map in accordance with the comprehensive plan or to amend the plan for the benefit of the neighborhood or city, because of changed conditions."

The application for the rezoning in the present case set forth these alleged changes in conditions since the adoption of the original ordinance placing this area in the R-4 district: "(1) Traffic conditions along Lassiter Mill Road; (2) commercial zoning of abutting property; and (3) need for some 20 ultra luxurious town houses in Raleigh." The record discloses no other claim of change in condition in the area.

[7] The increase in volume of traffic along Lassiter Mill Road is obviously due largely to the extensive residential construction throughout this area following the adoption of the original zoning ordinance. Thus, this is a change contemplated by the Council when the area was originally placed in the R-4 district. There is nothing in the record to suggest that the increased flow of traffic along Lassiter Mill Road affects the Williams property in a manner, or to a degree, differing from all other properties, north and south of the Williams land, which remain zoned and used for single family residence use.

[8] The record shows there has been no rezoning of abutting properties from R-4 uses to commercial uses since the enactment of the original ordinance. On the contrary, such change as has occurred in the use of abutting properties strengthens the position of the plaintiffs. The old mill, which was the reason for zoning its site as industrial property, has been burned and has

not been in operation for a number of years. Nothing in the record indicates that it will ever be rebuilt or replaced by another industrial operation. The property occupied by the Lassiter Lumber Company and antique shop is zoned R-4 and this operation is carried on solely as a nonconforming use in existence when the original ordinance was adopted. Furthermore, these are, quite obviously, relatively insignificant and exceptional variations from the single family residence use which prevails otherwise throughout the entire large area surrounding the Williams property on all sides.

[9]  If the need for additional luxurious town houses in Raleigh be a change in conditions since the adoption of the original ordinance in 1958, nothing in the record shows a need for such land use in this particular area. Thus, this case is distinguishable from situations in which the growing up of a residential area makes desirable the development therein of neighborhood grocery stores or service businesses. See, *Higbee v. Chicago, B. & Q. Railroad Co.*, 235 Wis. 91, 292 N.W. 320, 128 A.L.R. 734.

[10]  The record falls far short of indicating that the Williams property, itself, cannot be used, practicably, for single family residence purposes. The statement of the president of Williams to the Council that this five acres is not suitable for "the type of housing residence *that we have been building* in these two subdivisions we mentioned before," (emphasis added) is not basis for a finding that this particular property is not usable for single family residence purposes. On the contrary, as late as 1969, the Planning Commission recommended to the City Council that the old mill site, itself, be rezoned to R-4. Williams does not contend that its property is not suitable for residence purposes. It proposes to build residences thereon. The controversy relates to the type of building wherein people are to reside. It is not suggested that the proposed change from single family residences to R-6 uses will promote the development of, or appropriate use of, any property other than the five acres in question, or that the devotion of this tract to R-6 uses is made necessary by the growth in the population of this area resulting from the construction of single family residences therein.

*Zopfi v. City of Wilmington, supra,* is readily distinguishable from the present case. There, the property to be rezoned lay in or near the apex of a triangle lying between two heavily traveled highways. The major portion of the property, closest

to the apex of the triangle, was rezoned to commercial use and the remainder to apartment house use. Under the circumstances, there disclosed by the record, it was not unreasonable for the City Council of Wilmington to conclude that the property was not suitable for single family residences.

[11, 12]    A zoning ordinance, or amendment, which singles out and reclassifies a relatively small tract owned by a single person and surrounded by a much larger area uniformly zoned, so as to impose upon the small tract greater restrictions than those imposed upon the larger area, or so as to relieve the small tract from restrictions to which the rest of the area is subjected, is called "spot zoning." It is beyond the authority of the municipality, in the absence of a clear showing of a reasonable basis for such distinction. *Zopfi v. City of Wilmington, supra; Wakefield v. Kraft,* 202 Md. 136, 96 A. 2d 27, 29; *Page v. City of Portland,* 178 Oregon 632, 165 P. 2d 280; *Marshall v. Salt Lake City,* 105 Utah 111, 141 P. 2d 704, 149 A.L.R. 282; *Rowland v. Racine,* 223 Wis. 488, 271 N.W. 36; 58 AM. JUR., Zoning, § 39; 101 C.J.S., Zoning, § 91; Yokley, Zoning Law and Practice, 3d Ed., § 8-3; Annotation, 37 A.L.R. 2d 1143. The record discloses no reasonable basis for granting to Williams a freedom from restrictions imposed upon the owners of other properties in the surrounding area. The contention that the Williams property is an island, since it is bounded by Lassiter Mill Road, the Old Lassiter Mill Road, the Lassiter properties to the south and the proposed extension of Marlowe Road to the north, is untenable. It is no more of an island than is any other city block in the area.

Furthermore, the ordinance in question runs afoul of the rule stated in *Allred v. City of Raleigh, supra,* where, speaking through Chief Justice Bobbitt, we said:

"Consideration of the minutes of the Planning Commission and of the City Council show beyond doubt that the City Council did not determine that the 9.26-acre tract and the existing circumstances justified the rezoning of the 9.26-acre tract so as to permit *all* uses permissible in an R-10 district. On the contrary, it appears clearly that the ground on which the City Council based its action was its approval of the specific plans of the applicant to construct on the 9.26-acre tract 'luxury apartments * * * in twin high-rise towers.' * * *

"In our view, and we so hold, the zoning of the property may be changed from R-4 to R-10 only if and when its location and the surrounding circumstances are such that the property should be made available for all uses permitted in an R-10 district. Rezoning on consideration of assurances that a particular tract or parcel will be developed in accordance with restricted approved plans is not a permissible ground for placing the property in a zone where restrictions of the nature prescribed are not otherwise required or contemplated. Rezoning must be effected by the exercise of legislative power rather than by special arrangements with the owner of a particular tract or parcel of land."

[13] Here, as in the Allred case, *supra,* there is nothing whatever in the record to indicate that the City Council, by adopting the ordinance in question, contemplated the opening of this five acre tract to the construction thereon, if desired by the owner, of a hospital, a sanitarium or a rest home. On the contrary, it is quite apparent that the amending ordinance was adopted solely because the applicant convinced the Council that it would use the property for the construction of town houses as specifically described. Nevertheless, the adoption of the ordinance, if it be valid, would permit use of this property for any other purpose permitted in an R-6 district.

The ordinance was adopted by a procedure specifically forbidden by the Council's own resolution, which it adopted in 1967, pursuant to the requirements of G.S. 160-175. The mere recitals in the preamble of the ordinance that the City Council considered certain specified things are not conclusive so as to preclude the court from examining the record and making its own determination thereon in the light of the evidence concerning the proceedings before the Council. Furthermore, the recitals may well relate, in this instance, to two other tracts, in other parts of the city, rezoned by the same ordinance. The court may not substitute its judgment for that of the legislative body concerning the wisdom of imposing restrictions upon the use of properties within that body's legislative jurisdiction. *Schloss v. Jamison, supra; In re Markham,* 259 N.C. 566, 131 S.E. 2d 329; *In re Appeal of Parker, supra.* The court may, however, inquire into procedures followed by the board at the hearing before it and determine whether the ordinance was adopted in violation

of required procedures, or is arbitrary and without reasonable basis in view of the established circumstances. *Allred v. City of Raleigh, supra.*

Both because the ordinance in question constitutes unlawful "spot zoning" and unlawful "contract zoning," it is in excess of the authority of the City Council and invalid.

The judgment of the Superior Court of Wake County is, therefore, reversed and the matter is remanded to that court for the entry by it of a judgment declaring Ordinance (1970) 28-ZC-91 invalid insofar as it rezones the five acres of the Williams property from the R-4 classification to the R-6 classification.

Reversed and remanded.