IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-666

Filed 16 July 2025

Rockingham County, No. 23CVS002013-780

CAMP CAREFREE, INC, MICRIS, LLC, BRANDON W. LEEBRICK AND AMY E.
LEEBRICK, DONALD DOHM AND CHRISTINE DOHM, DAVID FORBES AND
WENDY FORBES, MARY LEA ANDERSON, JEFFREY DARREN SCOTT, and JILL
N. MEIER, Plaintiffs,

v.

ROCKINGHAM COUNTY, JULIE J. SANDERS, ELLEN J. WHITESELL, LINDA J.
CARMICHAEL, SUSAN J. MURRAY f/k/a SUSAN J. JONES, and NC
DEVELOPMENT HOLDINGS, LLC, Defendants.

Appeal by Plaintiffs from order entered 2 April 2024 by Judge Clayton D.

Somers in Rockingham County Superior Court. Heard in the Court of Appeals 18

March 2025. Supplemental briefing ordered on 16 May 2025.

*Van Winkle, Buck, Wall, Starnes & Davis, P.A., by Brian D. Gulden and
Jonathan H. Dunlap, for Plaintiffs-Appellants.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by S. Wilson Quick,
Jimmy C. Chang, and Pearson G. Cost, for Defendants-Appellees Julie J.
Sanders, Ellen J. Whitesell, Linda J. Carmichael, Susan J. Murray, and NC
Developments Holdings, LLC; Rockingham County Attorney Clyde B. Albright
and Frazier Hill & Fury, R.L.L.P., by William L. Hill, for Defendant-Appellee
Rockingham County.*

COLLINS, Judge.

This appeal arises from Rockingham County's adoption of two amendments to

its Unified Development Ordinance ("UDO") which resulted in a 192.74-acre parcel

of property ("Property") being rezoned to allow electronic gaming operations, among other uses, by right on the Property. Plaintiffs filed a complaint seeking a declaratory judgment that the amendments are "void and of no legal effect." Defendants moved to dismiss the complaint pursuant to North Carolina Rules of Civil Procedure 12(b)(1) and (6). The trial court granted Defendants' motions to dismiss for lack of subject matter jurisdiction based on a lack of standing; Plaintiffs appealed.

Plaintiffs argue that they made sufficient allegations to establish standing to bring this action and did not need to further plead special damages. Following this Court's recent opinion in *Gardner v. Richmond Cnty.*, 911 S.E.2d 761 (N.C. Ct. App. 2025), and the North Carolina Supreme Court decisions relied on and synthesized therein, we agree and reverse the trial court's order.

## I.  Procedural History

Plaintiffs are citizens of and property owners in Rockingham County, North Carolina with properties either abutting or in close proximity to the Property. They commenced this action on 18 October 2023 under the Declaratory Judgment Act by filing a verified complaint challenging Defendant Rockingham County's adoption of two amendments to its UDO ("Rezoning Legislation"). The first amendment changed the zoning classification of the Property from Residential Agricultural to Highway Commercial ("Map Amendment"). The second amendment increased the allowable uses in the County's Highway Commercial district ("Text Amendment").

Defendant Rockingham County answered and moved to dismiss. On 8 January 2024, the remaining Defendants moved to dismiss. After a hearing, the trial court entered an order on 21 March 2024 dismissing Plaintiffs' complaint for lack of subject matter jurisdiction based on a lack of standing. Plaintiffs timely appealed.

## II.    Factual Background

On 9 June 2023, Defendant NC Development Holdings, LLC submitted an application for the Map Amendment to the Rockingham County Department of Community Development, seeking to rezone the Property at issue, a 192.74-acre parcel in Stokesdale, Rockingham County, North Carolina, from Residential Agricultural to Highway Commercial. The owners of the Property–Defendants Julie J. Sanders, Ellen J. Whitesell, Linda J. Carmichael, and Susan J. Murray–joined the application.

Three days later, at its 12 June 2023 meeting, the Rockingham County Planning Board, at the request of County leadership, reviewed the proposed Text Amendment. The Text Amendment would allow all uses licensed by the State of North Carolina and State Entities to operate by right in the County's Highway Commercial districts. As a result, the Text Amendment would permit electronic gaming operations by right in Highway Commercial districts, removing the requirement that they be permitted only as a special use. The Planning Board voted at that meeting to recommend the Text Amendment to the Rockingham County Board

of Commissioners. Seven days later, on 19 June 2023, the Board of Commissioners unanimously approved the Text Amendment.

The Planning Board reviewed the Map Amendment application and voted on 10 July 2023 to recommend the Board of Commissioners deny it. On 21 August 2023, Plaintiffs, through counsel, wrote the Board of Commissioners alleging there had been procedural errors in the consideration and passage of the Text Amendment and the processing of the Map Amendment application, and stating reasons why the Map Amendment application should be rejected. Nonetheless, the Board of Commissioners considered and unanimously approved the Map Amendment application on 21 August 2023.

Under the Rockingham County UDO, the Residential Agricultural zoning district is

> established in areas that are characterized by large lots, clustered subdivisions, agricultural uses and open lands. These areas may include prime farmland and unique topographical or environmental restrictions that are remote from existing developed areas.
>
> . . . .
>
> [] The [Residential Agricultural] district carries forth the principles associated with the preservation and conservation of rural lands throughout the county where low density is desirable in order to protect environmentally sensitive areas, agricultural areas, and viewsheds.

In contrast, the Highway Commercial district

> provides areas for more intensive regional highway-

oriented business, office, service and civic uses. The district regulations are designed to protect and encourage the transitional character of the districts by permitting uses and building forms that are compatible with the surrounding area.

Prior to the approval of the Text Amendment, the UDO's Permitted Use Table allowed electronic gaming operations in a Highway Commercial district only after receiving a special use permit. Further, the Permitted Use Table did not list "State Licensed Uses" as a specific use. With the adoption of the Text Amendment, electronic gaming operations and State Licensed Uses are now allowed by right in a Highway Commercial district. Additional uses now permitted by right in a Highway Commercial district include dry cleaning facilities, crematories, fertilizer manufacturers, hotels, fairgrounds, hospitals, landfills for hazardous and industrial waste, and wastewater collection, treatment and disposal facilities. With the adoption of the Map Amendment, all of these uses are permitted by right on the Property.

## A. Facts specific to Plaintiffs' standing

All Plaintiffs are citizens of and property owners in Rockingham County, North Carolina with properties either abutting or in close proximity to the Property. Furthermore, each Plaintiff alleged specific injuries as a result of the Rezoning Legislation.

### 1. Camp Carefree

Camp Carefree owns property located directly south of and adjacent to the Property. Since 1986, during the summer months, Camp Carefree has provided a free, one-week overnight camping experience for kids aged six and older with chronic illnesses, well siblings of sick children, and a week for children with a sick parent. Many of these children otherwise live protected lives and spend a good deal of their time in hospitals and doctor's offices. Camp Carefree provides these children with opportunities to play, learn, and have fun with others who deal with similar difficulties. Camp Carefree can accommodate 120 campers, counselors, medical personnel, and volunteers. Outside of the summer months, Camp Carefree rents out its facilities to churches, businesses, and community and family groups.

Rhonda Rodenbough, Camp Carefree's managing board member who resides on Camp Carefree's property, testified via affidavit that the Rezoning Legislation would negatively impact its property use by: "dramatically impact[ing] the peaceful and quiet enjoyment of Camp Carefree, Inc." by "impacting the physical and mental wellbeing of our campers who suffer from neurological disorders that are significantly affected by loud noises, light and over stimulation"; "dramatically impacting" the camp "in terms of visual intrusiveness, and noise and light trespass"; and "significant[ly] increas[ing]" traffic along the access roads to the camp.

### 2. *Micris, LLC*

Micris, LLC owns property located less than 650 feet to the east of the Property. Michael J. Cusato, Jr., is the managing member of Micris and the owner

and President of Kalo Food, LLC, the bakery that occupies the Micris property. The bakery specializes in delivering gluten-free foods to customers throughout Maryland, Virginia, and North Carolina.

Mr. Cusato testified via affidavit that the Rezoning Legislation would "dramatically and detrimentally impact [his] business" by causing "a significant increase in traffic" which would increase exposure to liability for Kalo Food's trucks and drivers and increase light trespass.

### 3. *Brandon and Amy Leebrick*

Brandon and Amy Leebrick own property located approximately 300 feet south of the Property. On their property, they operate a small farm, a registered homeschool for three of their four children, and a rental house. Mr. Leebrick testified via affidavit that the Rezoning Legislation threatened to: contaminate the private wells and natural springs on their property; "dramatically and detrimentally impact" their farm operations and opportunities, their ability to rent their rental home, and their ability to homeschool and educate their children safely; cause visual intrusiveness as well as noise and light trespass, as development on the Property would be within sight of their farm; increase traffic accidents and incidents involving driving under the influence of alcohol; and increase criminal activity and trespass on their property due to its proximity to the Property and the lack of any conditions that would require walls, fences, or other barriers.

### 4. *Donald and Christine Dohm*

Donald and Christine Dohm own property located directly north of and adjacent to the Property and have lived there since 2005. Mrs. Dohm testified via affidavit that the Rezoning Legislation threatened to: significantly increase traffic, making it more difficult for them to enter and exit their neighborhood due to the required turns and u-turns among highway traffic; and "dramatically and detrimentally" impact their property in terms of visual intrusiveness, noise, and light trespass.

### 5. *David and Wendy Forbes*

David and Wendy Forbes have owned property located directly north and within 350 feet of the Property since 2019. Mr. Forbes testified via affidavit that the Rezoning Legislation would "dramatically and detrimentally impact [his] peaceful and quiet enjoyment of [his] residence" because it would increase traffic and criminal activity, overburden the local utilities, cause light and noise trespass, and cause visual intrusiveness.

### 6. *Mary Anderson*

Mary Anderson has owned property located directly north and immediately adjacent to the Property since 2004. Her property has been in her family since 1986. Ms. Anderson testified via affidavit that the Rezoning Legislation threatened to: significantly increase traffic along Highway 220, "interfering with [her] ability to come and go from [her] property without increased danger"; result in her family's loss

of privacy and ability to enjoy the "peacefulness and safety of a rural community"; cause visual intrusiveness; and cause noise and light trespass.

### 7. *Jeffery Scott*

Jeffery Scott owns property located directly north and adjacent to the Property and has lived there since 2019. Mr. Scott testified via affidavit that the Rezoning Legislation threatened to: significantly increase traffic; decrease his privacy and safety; cause noise, light, and well-water pollution; and decrease the safety of his children on the roads and at home.

### 8. *Jill Meier*

Jill Meier owns property southwest of the Property. Prior to moving to Stokesdale, she had lived in New York and other states with entertainment districts and has "first-hand knowledge of the problems, including high traffic, lights, noise and other intrusions that come with large properties zoned as highway commercial." She moved to Stokesdale and chose her property because she no longer wanted to live in or near a city–she wanted a small farm in a rural setting without big businesses, lights, noise, and excess traffic. Ms. Meier testified that the Rezoning Legislation threatened to significantly increase traffic on Simpson Road and increase the dangerous traffic conditions at the intersection of Simpson Road and U.S. Highway 220 which "is already a congested and dangerous intersection."

## III. Discussion

The issue here is whether the trial court erred by concluding that Plaintiffs lacked standing to challenge the Rezoning Legislation.

### A. Standard of Review

"Standing is properly challenged by a 12(b)(1) motion to dismiss, or 12(b)(6) motion to dismiss for a failure to state a claim upon which relief may be granted." *Fairfield Harbour Prop. Owners Ass'n, Inc. v. Midsouth Golf, LLC*, 215 N.C. App. 66, 72 (2011) (citation omitted). This Court reviews a trial court's granting of a motion to dismiss for lack of standing de novo. *Metcalf v. Black Dog Realty, LLC*, 200 N.C. App. 619, 625 (2009) (quotation marks and citations omitted). In our de novo review, "we view the allegations as true and the supporting record in the light most favorable to the non-moving party." *Id.* (quotation marks and citations omitted). As standing is a question of "subject matter jurisdiction[,]" *Neuse River Found., Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 113 (2002), a court reviewing subject matter jurisdiction "may consider information outside the scope of the pleadings in addition to the allegations set out in the complaint." *United Daughters of the Confederacy v. City of Winston-Salem*, 383 N.C. 612, 624 (2022).

### B. Analysis

Plaintiffs argue that the trial court erred by dismissing their complaint for lack of standing because they "have set forth sufficient allegations for purposes of standing under the Declaratory Judgment Act" and "special damages are not required to

establish standing in the legislative zoning context." Defendants, on the other hand, argue that the trial court correctly dismissed "Plaintiffs' challenges to the Map and Text Amendments because the Plaintiffs lack the special and distinct damages required for standing" and because "Plaintiffs' various attempts to overturn this Court's 'special damages' precedent fails." Defendants' arguments fail.

"Under our Supreme Court's decision in *Committee to Elect Dan Forest*, a two-step analysis determines whether a plaintiff has standing to challenge a legislative zoning amendment." *Gardner*, 911 S.E.2d at 766. "First, it must be determined whether an alleged statute confers a cause of action to a plaintiff." *Id.* (citing *Comm. to Elect Dan Forest v. Employees Political Action Committee (EMPAC)*, 376 N.C. 558, 599 (2021)). "If a statutory cause of action is conferred, it must then be determined whether the plaintiff has satisfied and sufficiently alleged the statutory requirements in bringing a claim." *Id.*

As to the first step, our Supreme Court has long held that a suit to determine the validity of a zoning ordinance is a proper case for a declaratory judgment. *Godfrey v. Zoning Bd. of Adjustment*, 317 N.C. 51, 66 (1986); *Blades v. City of Raleigh*, 280 N.C. 531, 544 (1972); *Woodard v. Carteret Cnty.*, 270 N.C. 55, 61 (1967). Here, Defendants do not contest that the Act confers a cause of action on Plaintiffs.

As to the second step, the Act provides:

> Any person . . . whose rights, status or other legal relations
> are *affected by* a statute [or] municipal ordinance . . . may
> have determined any question of construction or validity

> arising under the . . . statute [or] ordinance . . . and obtain
> a declaration of rights, status, or other legal relations
> thereunder.

N.C. Gen. Stat. § 1-254 (2023) (emphasis added). Under the Act, so long as a plaintiff sufficiently alleges it was "affected by" a defendant's decision to rezone property, the plaintiff "is within the class of persons upon whom the [Act] confers a cause of action," and the plaintiff is "'guarantee[d] standing to sue' and seek a declaratory judgment to clarify its legal rights and relations." *Gardner*, 911 S.E.2d at 766 (citing *Comm. to Elect Dan Forest*, 376 N.C. at 607). Indeed, our Supreme Court has stated, "The plaintiffs, owners of property in the adjoining area affected by the ordinance, are parties in interest entitled to maintain the action." *Godfrey*, 317 N.C. at 66-67 (quoting *Blades*, 280 N.C. at 544) (citing *Jackson v. Board of Adjustment*, 275 N.C. 155 (1969); *Zopfi v. City of Wilmington*, 273 N.C. 430 (1968); 3 A. Rathkopf & D. Rathkopf, *The Law of Zoning and Planning* § 35.01[1] (4th ed. 1986)).

The Act does not require a plaintiff to allege an "injury in fact" to have standing to challenge a statute or ordinance. *Gardner*, 911 S.E.2d at 765 ("[T]he North Carolina Constitution does not impose a requirement to allege an 'injury in fact' when challenging the validity of a statute, but instead that limit is imposed as 'a rule of prudential self-restraint' in cases challenging the constitutionality of government action to ensure our courts only address actual controversies." (quoting *Comm. to Elect Dan Forest*, 376 N.C. at 608)). Furthermore, a plaintiff challenging a legislative zoning decision in a declaratory judgment action is not required to allege special

damages in its complaint. *Id.* at 768 ("[C]hallenges to quasi-judicial zoning decisions require a pleading of special damages, but challenges to legislative zoning decisions do not." (citing *Village Creek Prop. Owners' Ass'n Inc. v. Town of Edenton*, 135 N.C. App. 482, 486 n.4 (1991))).[1]

Here, Defendant Rockingham County's rezoning amendments were a legislative act decided by its Board of Commissioners. Because these amendments were "legislative, not quasi-judicial, Plaintiff[s] w[ere] *not* required to allege special damages within [their] complaint, separate and distinct from the general community." *Gardner*, 911 S.E.2d at 769. Accordingly, so long as Plaintiffs in this case sufficiently alleged that they were "affected by" Defendant Rockingham County's decision to rezone the Property, Plaintiffs have standing to seek a declaratory judgment to clarify their legal rights and relations. *See id.* at 766; *Godfrey*, 317 N.C.

---

[1] The Supreme Court in *Village Creek* noted:

> We are aware of this Court's opinion in *Davis v. City of Archdale*, 81 N.C. App. 505, 508, 344 S.E.2d 369, 371 (1986), which states a party challenging a rezoning ordinance via a declaratory judgment action "must allege and show damages distinct from the rest of the community." *Id.* (citing *Heery* [*v. Highlands Zoning Bd. of Adjustment*, 61 N.C. App. 612, 612, 300 S.E.2d 869, 869 (1983)]). The North Carolina Supreme Court addressed the *Davis* opinion in *County of Lancaster v. Mecklenburg County*, 334 N.C. 496, 503-04 n. 4, 434 S.E.2d 604, 610 n. 4 (1993), and, without deciding the issue, noted that *Davis* "alludes to a requirement for 'special damages' distinct from those of the rest of the community to confer standing to challenge a rezoning." *Id.* The *Lancaster* court also noted, however, that the test for standing provided in *Davis* was taken from cases challenging standing in quasi-judicial, rather than legislative, actions. *Id.* We therefore do not read *Davis* as requiring a party challenging a legislative zoning decision in a declaratory judgment action to allege special damages in its complaint.

*Id.*

at 66-67.

Defendants' argument that "Plaintiffs lack the special and distinct damages required for standing" is precluded by this Court's opinion in *Gardner*, and the North Carolina Supreme Court decisions relied on and synthesized therein, which was issued after the trial court dismissed this action and the parties had submitted their briefs to this Court. Upon our invitation, the parties submitted supplemental briefs addressing the effect of *Gardner* on the issues on appeal. In their supplemental brief, Defendants abandon their argument that Plaintiffs were required to plead special damages and instead essentially argue that Plaintiffs' alleged "generic adverse effects" are insufficient to meet their burden under the Act. This argument was not properly preserved—appearing for the first time in Defendants' supplemental brief— and is nonetheless without merit.

In *Gardner*, several plaintiffs, including municipal plaintiffs the City of Hamlet and the Town of Dobbins Heights ("Town"), filed a verified complaint seeking a declaratory judgment that the Richmond County Board of Commissioners' ("Board") rezoning of a certain parcel of property was void. 911 S.E.2d. at 762-63.

Plaintiffs alleged that the Seaboard Coastline Railroad Company submitted a rezoning application to the Board seeking to rezone approximately 167 acres of property owned by Seaboard from "Rural-Residential" and "Agricultural Residential" to "Heavy Industrial." *Id.* at 763. The complaint alleged that the rezoned property was located about two and a half miles from the Town's corporate limits. *Id.* Located

"less than 2,500 feet" from the rezoned property is the "Marks Creek Property," a parcel that holds "a body of water that both the Town of Dobbins Heights and the City of Hamlet use as their primary source of drinking water." *Id.*

Seaboard sought to rezone the property to allow an Ohio-based corporation to construct and operate a biochar production facility. *Id.* "This facility . . . would 'cook[]' untreated lumber and creosote-treated railroad ties through a pyrolysis process" to produce charcoal." *Id.* The complaint alleged that "creosote is a known carcinogen, and the burning of carcinogens can create harmful toxins and air pollution that are detrimental to the health of humans and animals." The "pyrolysis process" would also allegedly emit air pollutants. *Id.*

The Board voted to approve Seaboard's rezoning application; the property was rezoned to Heavy Industrial. *Id.*

In its complaint, the Town alleged it had standing to challenge the rezoning because the "'proposed biochar production facility plant will have a significant negative impact' on the water supply and 'general quality of life for the residents.'" *Id.* Defendant Richmond County's motion to dismiss asserted the Town lacked standing to bring a declaratory judgment action because a declaratory judgment action could only be challenged "by a person who has a specific personal and legal interest in the subject matter affected by the zoning ordinance and who is directly and adversely affected thereby." *Id.* at 764. Defendant Richmond County also argued the Town must show special damages "distinct from the rest of the community." *Id.*

The trial court denied the motion to dismiss the City of Hamlet's complaint but granted the motion to dismiss the Town's complaint for lack of standing. *Id.* On appeal, this Court reversed the trial court's order because the Town's "allegations assert standing to challenge Defendant's rezoning decision and it was not required to plead special damages." *Id.* at 765. This Court noted that Defendant Richmond County did not challenge, and thus conceded, that the Act "*does* confer a legal right and cause of action" on the Town. *Id.* at 766. The Court then explained, "Under the [Act], so long as [the Town] sufficiently alleged it was 'affected by' [d]efendant's decision to rezone the [p]roperty, [the Town] is within the class of persons upon whom the [Act] confers a cause of action, and [the Town] is 'guarantee[d] standing to sue' and seek a declaratory judgment to clarify its legal rights and relations." *Id.*

The Court reasoned and concluded:

> [T]he proposed rezoning ordinance would completely change the permitted uses of the [p]roperty at issue from primarily residential to wholly Heavy Industrial. . . . This rezoning would explicitly allow for the erection of [the] biochar production facility, an operation entirely different from residential land use.
>
> In the complaint, [the Town] clearly alleges how the erection of this biochar facility would directly and negatively impact the community, such as the burning of carcinogens, releasing a number of "toxic and harmful air pollutants," potential contamination to local water supply, and "traffic from industry" that "would disproportionally affect the road network of" [the Town]. We note the only differences between the allegations of the municipal plaintiffs are that the City of Hamlet owns the public water supply system installed in Marks Creek, even though this

- 16 -

> system "serves over 10,000 people, including the residents of the City of Hamlet" and [the Town], and that there is a small difference between the proximity of each municipality's borders to the [p]roperty.
>
> Plaintiff has satisfied the requirements to bring a claim under the DJA in sufficiently alleging it was "affected by" Defendant's rezoning ordinance.

*Id.* at 767.

Here, as in *Gardner*, the Rezoning Legislation completely changed the permitted uses of the Property. The Map Amendment changed the use of the Property from Residential Agriculture to Highway Commercial. While the purpose of the Residential Agriculture district is the "preservation and conservation of rural lands throughout the county where low density is desirable in order to protect environmentally sensitive areas, agricultural areas, and viewsheds," the Highway Commercial district is "designed to protect and encourage the transitional character of the districts" and to provide "areas for more intensive regional highway-oriented business, office, service and civil use." Furthermore, the Highway Commercial district allows for the development of industry that is not consistent with agricultural use–such as electronic gaming operations, dry-cleaning facilities, research laboratories, hotels, hospitals, multi-family apartments and condominiums, crematoriums, radio stations, and billboards.

The Text Amendment imposes a similar, categorical change on the use of the Property and on all properties zoned Highway Commercial. Prior to the adoption of

the Text Amendment, the following uses were not permitted by right in Highway Commercial districts: electronic gaming operations, dry cleaning facilities, crematories, fertilizer manufacturers, hotels, fairgrounds, hospitals, landfills for hazardous and industrial waste, and wastewater collection, treatment and disposal facilities. After the Text Amendment, all these uses are now permitted by right in Highway Commercial districts, including on the Property. Additionally, there are now no development standards, temporary use restrictions, or special use permits required for these uses on the Property.

In this case, the rezoned property is even closer to Plaintiffs' properties than it was to the Town's property in *Gardner* where the Town's corporate limits were about two and a half miles from the rezoned property. Here Plaintiffs' properties are either abutting or in close proximity to the rezoned Property and "a plaintiff's proximity to the rezoned property is a factor our Courts have considered." *Morgan v. Nash County*, 224 N.C. App. 60, 67 (2012); *see Blades*, 280 N.C. at 544 (standing found where the plaintiffs were "owners of property in the adjoining area affected by the ordinance"); *Zopfi*, 273 N.C. at 431 (standing found where the plaintiffs owned property in a subdivision "adjoining or in close proximity" to the rezoned property).

And here, as in *Gardner*, each Plaintiff has clearly alleged how the Rezoning Legislation would directly and negatively affect them, with allegations including the following:

a.    Higher intensity uses on neighboring properties and

in the area which are incompatible with the current uses;

b. Water pollution from large scale development, non-agricultural, and higher intensity uses contaminating private wells and natural springs in the area, on plaintiffs' properties, and, in particular, a lake on Camp Carefree's property;

c. Increased traffic and safety issues around the Property, related to the permissible number of high-intensity uses and large-scale developments;

d. The potential for increased criminal activity including trespassers from large-scale developments, high-intensity uses, and the probability of a vice-oriented tourist attraction;

e. Increased traffic, noise, odor, glare, light trespass, litter, and parking from large-scale development and high-intensity uses;

f. Decreased property values due to the proximity to the large-scale developments, high-intensity uses, the probability of a vice-oriented tourist attraction, as well as the increased noise, odor, light, litter, water pollution, and parking limitations;

g. Decreased peace and quiet enjoyment of the surrounding properties, but most notably for Camp Carefree and the campers who suffer from neurological disorders that are significantly affected by loud noises, light, and overstimulation;

h. Increases in the amount of paved impervious surfaces, creating drainage and erosion issues where there used to be healthy ecosystems and farmland.

As in *Gardner,* Plaintiffs in this case have satisfied the requirements to bring a claim under the Act by sufficiently alleging that they are "affected by" Defendant Rockingham County's Rezoning Legislation.

Defendants assert that the *Gardner* court "emphasized" the standard set forth in *Taylor v. City of Raleigh* that "a party has standing to challenge a rezoning ordinance when they have 'a specific personal and legal interest in the subject matter affected by the zoning ordinance and . . . is directly and adversely affected thereby.'" *Gardner,* 911 S.E.2d at 765 (quoting *Taylor v. City of Raleigh,* 290 N.C. 608, 620 (1976)). Far from emphasizing this standard, this Court in *Gardner* explained that that *Committee to Elect Dan Forest* "lays out a broader framework within which *Taylor* fits." *Gardner,* 911 S.E.2d at 767.

In *Taylor,* the plaintiff landowners challenged a rezoning ordinance that would allow the defendant to construct new apartment buildings and townhomes. 290 N.C. at 610. Our Supreme Court held that "[t]he undisputed evidence discloses that the impact of the rezoning ordinance on any of the plaintiffs was minimal." *Id.* at 620. In support of this holding, the Court noted that "[t]he property of [the] plaintiffs Dunn on Boxwood Drive is one-half mile or more from the northern (closest) boundary of the rezoned 39.89 acres and the property of the other plaintiffs is farther from said northern boundary." *Id.* Additionally, "[p]rior to the bringing of this action neither [the] plaintiffs nor any of those who protested the rezoning of the entire 85-acre tract had attacked, by protest or by lawsuit, the rezoning of the 39.89 acres farthest from them." *Id.* The rezoning amendment at issue also "did not, for the first time, authorize multi-family dwellings in the area; it merely increased the permissible types and units of dwellings." *Id.* at 621. The *Taylor* Court concluded:

> On this record we would be unwilling to hold that plaintiffs have established that they are persons aggrieved by the rezoning ordinance. . . . However, in the circumstances here involved, we do not base [our] decision solely on the ground [the] plaintiffs are not sufficiently directly and adversely affected by the rezoning ordinance to entitle them to attack it. Rather, we treat [the] plaintiffs' tenuous standing as a circumstance in considering whether [the] plaintiffs' belated attack on the rezoning ordinance is barred by laches.

*Id.* (internal citation omitted).

Just as the Court in *Gardner* determined, we too determine "the facts presented here, and the allegations in Plaintiff[s'] complaint, taken as true and in the light most favorable to Plaintiff[s] are distinguishable from those present in *Taylor*." *Gardner*, 911 S.E.2d. at 767. Here, unlike in *Taylor*, and as in *Gardner*, the proposed rezoning ordinances change the permitted uses of the Property, in this case by rezoning the Property from Residential Agricultural to Highway Commercial and vastly expand the uses permitted by right in a Highway Commercial district. Furthermore, unlike in *Taylor* where "[t]he undisputed evidence discloses that the impact of the rezoning ordinance on any of the plaintiffs was minimal[,]" 290 N.C. at 620, each Plaintiff in this case has clearly alleged how the Rezoning Legislation would directly and negatively affect them.

## IV. Conclusion

For the foregoing reasons, the trial court's order is reversed.

REVERSED.

Judges STROUD and ZACHARY concur.