RODNEY L. PURSER, AND WIFE, CAROL F. PURSER, PLAINTIFFS v. MECKLENBURG COUNTY, NORTH CAROLINA, H. PARKS HELMS, CHAIRMAN AND MEMBER OF THE BOARD OF COUNTY COMMISSIONERS OF MECKLENBURG COUNTY, NORTH CAROLINA, AND DOUG W. BOOTH, EDNA CHIRICO, PATSY KINSEY, LLOYD SCHER, ANN SCHRADER, AND JAMES (JIM) F. RICHARDSON, MEMBERS OF THE BOARD OF COUNTY COMMISSIONERS OF MECKLENBURG COUNTY NORTH CAROLINA, AND ANDY THOMAS DULIN, DEFENDANTS

No. COA96-1357

(Filed 5 August 1997)

**Zoning § 94 (NCI4th)— spot rezoning—reasonable basis**

A county board of commissioners made a clear showing of a reasonable basis for the spot zoning of a 14.9 acre tract of land to allow a neighborhood convenience center where the trial court found that the site plan for the property met or exceeded all requirements of the county's district plan regarding size, density,

buffers, traffic flow, and distance from other centers; the existing district plan provided for a neighborhood mixed use center one-half mile from the property, but such a project depended upon the construction of two roads 11 to 20 years in the future; and development of the neighborhood convenience center would benefit the surrounding community by providing daily goods and services while eliminating lengthy trips and lessening the burden on other streets.

Appeal by plaintiffs from judgment entered 18 July 1996 by Judge Charles C. Lamm, Jr., in Mecklenburg County Superior Court. Heard in the Court of Appeals 4 June 1997.

*Cecil M. Curtis, P.A., by Cecil M. Curtis, for plaintiffs-appellants.*

*Ruff, Bond, Cobb, Wade & McNair, L.L.P., by James O. Cobb and Stephen D. Koehler, for all defendants-appellees except Andy Thomas Dulin.*

*Perry, Patrick, Farmer & Michaux, P.A., by Bailey Patrick, Jr., Roy H. Michaux, Jr. and John H. Carmichael, for defendant-appellee Andy Thomas Dulin.*

WALKER, Judge.

In November 1985, the Mecklenburg County Board of Commissioners (the Board) and the Charlotte City Council (the City Council) adopted the 2005 Generalized Land Plan which divided Mecklenburg County into seven planning districts. Additionally, the General Development Policies District Plan (GDP) describing community issues, goals, objectives, policies and strategies of the seven districts was jointly adopted on 22 May 1990.

The GDP provides for several types of Mixed-Use and Commercial Centers to be placed throughout Mecklenburg County so as to organize and give structure to the overall land use pattern of the County.

The smallest type of center described in the GDP is the Neighborhood Convenience Center, the purpose of which is the sale of convenience goods to meet the daily needs of the immediate residential neighborhood, including food, drugs, sundries, laundry, cleaners, barbers and shoe repair shops. These Centers would contain a maximum of 70,000 square feet of retail space. The seven individual

**PURSER v. MECKLENBURG COUNTY**

[127 N.C. App. 63 (1997)]

district plans identify over 70 locations where the Centers either exist or were appropriate for future development.

The GDP also describes a larger Neighborhood Mixed-Use Center. This type of Center contains up to 250,000 square feet of non-residential development which includes services such as a supermarket, small shops, restaurants, low-rise medical centers and banks. The GDP acknowledges that "planning is a dynamic process that necessitates being flexible and adapting to changes," and it establishes four separate processes for initiating formal amendments to a district plan. One such method allows a petitioner seeking rezoning that conflicts with a district plan to obtain an amendment to the plan as part of the general rezoning process. If the rezoning petition is approved by the Board, the relevant district plan is amended simultaneously with the zoning decision.

On 6 July 1993, defendant Andy Dulin filed a petition to rezone a 14.9 acre portion of his property at the southwest corner of the intersection formed by Plaza Road Extension and Hood Road from the existing R-3 to B-1 (CD) Parallel Conditional Use District to allow for a Neighborhood Convenience Center to serve this section of the East District of the County.

The East District Plan (EDP), adopted by the Board in September 1990, identified proposed development for three Neighborhood Mixed-Use Centers. One of these centers had as its proposed location the intersection of Plaza Road Extension and the East Circumferential Roadway (a proposed beltway for the County). This location was near Dulin's property; however, before a Mixed-Use Center could be built there, a portion of Plaza Road Extension would have to be relocated and the circumferential roadway would have to be constructed.

After the filing of Dulin's petition and prior to a public hearing thereon, the Charlotte Mecklenburg Planning Commission (Planning Commission) staff prepared a Pre-Hearing Staff Analysis on the petition. On 13 September 1993, the Board and the Zoning Committee of the Planning Commission held a public hearing on Dulin's petition. Walter Fields, Land Development Manager of the County, made a presentation regarding the petition, the property and the land use and zoning in the surrounding area. Fields also described in detail the site plan and other outstanding issues attendant to the site plan. Defendant Dulin's representative, Fred Bryant, spoke in favor of the rezoning and six people spoke in opposition. After some discussion,

PURSER v. MECKLENBURG COUNTY

[127 N.C. App. 63 (1997)]

the Board deferred its decision until after a recommendation was received from the Planning Commission.

The Planning Commission is a fourteen member citizen board made up of seven members appointed by the Board, five members appointed by the City Council, and two members appointed by Charlotte's mayor. The members are divided into two standing committees, the Planning Committee and the Zoning Committee. The Planning Committee deals with planning matters, mandatory referrals, adoptions of district plans, small-area plans, special project plans and quarter plans. The Zoning Committee deals with the ongoing administration of the rezoning process.

On 9 November 1993, the Planning Committee considered the EDP plan amendment requested by Dulin and voted unanimously to recommend denial of the proposal. The Zoning Committee then met on 20 December 1993 and voted unanimously to recommend that the petition be approved. Among the reasons cited in the Zoning Committee's written recommendation in support of the petition was that the Dulin property is more suitable for development of a shopping center in the near future than the designated site due to good access, superior topography and generous buffers and green space. These written recommendations were sent to the Board.

On 18 January 1994, the Board again considered the petition and voted five to one in favor of adoption of the resolution approving a change in zoning in accordance with the petition. As a result of the Board's decision, a larger Neighborhood Mixed-Use Center originally proposed for a designated site less than 3,000 feet from the Dulin property was replaced in favor of a smaller Neighborhood Convenience Center.

On 17 October 1994, plaintiffs owned property located in the southeast quadrant of Hood Road and Plaza Road Extension. They filed a complaint against Mecklenburg County and members of the Board seeking a judgment declaring the 18 January 1994 amendment to the zoning ordinance to be unlawful, invalid and void. Defendant Dulin was added as a party defendant on 2 November 1994.

On 29 February 1996, the trial court entered partial summary judgment in favor of the plaintiffs, ruling that the rezoning in question was "spot zoning" and that defendant Mecklenburg County had the burden of making a "clear showing of a reasonable basis for the rezoning." At the 8 July 1996 civil term, the case was tried without a

PURSER v. MECKLENBURG COUNTY

[127 N.C. App. 63 (1997)]

jury. The trial court made findings and concluded that "even though the rezoning of the Dulin property constituted spot zoning, it was of the legal variety and therefore not invalid," the County has made a clear showing of a reasonable basis in rezoning the property and its action was neither arbitrary nor discriminatory. The plaintiffs were taxed with court costs including an expert witness fee for Fred Bryant in the amount of $1,000.00.

Plaintiffs first argue that the trial court committed prejudicial error in admitting evidence which was not reviewed by the Board in making its determination to rezone Dulin's property. Specifically, plaintiffs argue that the trial court should not have admitted (1) the testimony of Walter Fields regarding a map depicting the location of Neighborhood Convenience Centers in the County and (2) other exhibits which plaintiffs claim were created after the Board's decision. These exhibits include: District plans other than the EDP; a map of the County depicting the locations of Neighborhood Convenience Centers in the County; photographs of existing Neighborhood Convenience Centers in the County; photographs of Dulin's property; and photographs of the site originally designated for the Neighborhood Mixed-Use Center in the EDP.

Plaintiffs agreed it would be appropriate for the trial court to consider any evidence that came before the Board, the Planning Committee and the Zoning Committee, as well as the GDP and the EDP. In ruling on plaintiffs' objections, the trial court determined that evidence relevant to the GDP would be admitted. After reviewing the record, we conclude that the evidence which plaintiffs find objectionable merely illustrated the underlying planning and policy considerations reflected in the GDP and the EDP and how those plans have been implemented in practice. Therefore, the testimonies of Fields and Bryant, along with the exhibits, did not constitute "evidence created after the rezoning process." The plaintiffs have failed to show how the admission of such evidence was so prejudicial that a different result likely would have been reached had this evidence been excluded. *Board of Education v. Lamm*, 276 N.C. 487, 492, 173 S.E.2d 281, 284 (1970).

Next, the plaintiffs contend that the trial court erred in concluding that the County has made a clear showing of a reasonable basis for rezoning Dulin's property as required by our Supreme Court's ruling in *Chrismon v. Guilford County*, 322 N.C. 611, 370 S.E.2d 579 (1988). There, the Court examined the validity of the rezoning of 8.57

acres of land belonging to defendant Bruce Clapp (Clapp). In 1948, Clapp started operating a business adjacent to his home in rural Guilford County. The business first consisted of "buying, drying, storing, and selling grain" and second of "selling and distributing lime, fertilizer, pesticides, and other agricultural chemicals." *Id.* at 613, 370 S.E.2d at 581.

In 1964, Guilford County adopted a comprehensive zoning ordinance which zoned Clapp's property as "A-1 Agricultural." Under A-1 Agricultural, the grain drying and storing portion of Clapp's business was a permitted use. The remaining portion of Clapp's business, i.e. the sale and distribution of fertilizer and other agricultural chemicals, was not permitted uses; however, because these uses pre-existed the ordinance, Clapp was allowed to continue them as long as they were not expanded. *Id.* at 614, 370 S.E.2d at 581.

In 1980, Clapp expanded his business and applied to have his property rezoned from A-1 Agricultural to a Conditional Use Industrial District, which would allow for his expanded agricultural chemical operation. On 20 December 1982, Guilford County approved the conditional use permit application. *Id.* at 615, 370 S.E.2d at 582.

The Chrismons were adjoining property owners and they filed suit seeking a declaratory judgment that the rezoning amendment was unlawful and void. The Court held that in any case involving spot zoning two questions must be addressed by the finder of fact: "(1) did the zoning activity in the case constitute spot zoning as our courts have defined that term; and (2) if so, did the zoning authority make a clear showing of a reasonable basis for the zoning." *Id.* at 627, 370 S.E.2d at 588.

In addressing the first question, the Court noted "spot zoning" has been defined as follows:

> A zoning ordinance, or amendment, which singles out and reclassifies a relatively small tract owned by a single person and surrounded by a much larger area uniformly zoned, so as to impose upon the small tract greater restrictions than those imposed upon the larger area, or so as to relieve the small tract from restrictions to which the rest of the area is subjected, is called "spot zoning."

*Id.* at 627, 370 S.E.2d at 588-89 (*quoting Blades v. City of Raleigh*, 280 N.C. 531, 549, 187 S.E.2d 35, 45 (1972)).

The Court next noted that "a judicial determination as to the existence or nonexistence of a sufficient reasonable basis in the context of spot zoning is, and must be, the product of complex factors." *Id.* at 628, 370 S.E.2d at 589. The Court further noted that "[t]he possible 'factors' are numerous and flexible, and they exist to provide guidelines for a judicial balancing of interests." *Id.* Among the factors the *Chrismon* court found relevant are:

(1) the size of the tract;

(2) the compatibility of the disputed zoning action with an existing comprehensive plan;

(3) the benefits and detriments resulting from the zoning action for the owner of the newly zoned property, his neighbors, and the surrounding community; and

(4) the relationship between the uses envisioned under the new zoning and the uses currently present in adjacent tracts.

*Id.*

In view of the holding in *Chrismon*, we must determine whether the trial court properly concluded that the Board made a clear showing of a reasonable basis for rezoning Dulin's property.

In its order, the trial court set forth certain conclusions which more accurately should have been included in its findings since they support its ultimate conclusion that the County made a clear showing of a reasonable basis for the rezoning of Dulin's property. However, the mislabeling of these findings is not detrimental to the outcome of the decision. *See Cauble v. City of Asheville,* 66 N.C. App. 537, 545, 311 S.E.2d 889, 894 (1984).

In its order, the trial court analyzed each of the factors enumerated in *Chrismon*. First, the court found that the rezoned property was a 14.9 acre tract of land located at the intersection of Plaza Road Extension and Hood Road. Further, the conditional site plan for the Neighborhood Convenience Center proposed for the property met or exceeded all the requirements set forth in the GDP and the EDP regarding size, density, buffers, traffic flow, and distance from other centers. The court then concluded that the Dulin property was suitable and beneficial due to the low density of the site plan and the generous buffers between the area to be developed and surrounding residential property.

The trial court next examined the compatibility of the zoning change with the County's existing comprehensive land use plan. The court found that the existing EDP provided for a Neighborhood Mixed-Use Center at a location one-half mile west of Dulin's property, which would be at the intersection of a proposed relocated portion of the Plaza Road Extension and a proposed Eastern Circumferential Road. However, the court then found that neither of these roads were in existence and that construction of these roads was in a time frame of 11 to 20 years from 1990. Thus, the time and expense involved in the construction of the roads made it unlikely that the Neighborhood Mixed-Use Center would be suitable for development within the foreseeable future. The trial court then concluded that the use of the Dulin property as a Neighborhood Convenience Center was compatible with the policies expressed in the GDP and the District Plans in that the Center had been designed to be an integral part of the entire residential community in which it would be located.

Next, the trial court made findings with regard to any benefits and detriments to Dulin, his neighbors and the surrounding neighborhood. The court found that the philosophy behind the Neighborhood Convenience Center, as set out in the GDP, and its placement within residential areas, was to allow those who live nearby to walk or travel very short distances for goods to meet their daily needs. Thus, the trial court concluded development of the Neighborhood Convenience Center would benefit the surrounding community in that it would provide daily goods and services while eliminating lengthy trips thereby lessening the burden on other streets and roads.

With regard to the detriments to the surrounding community, the court noted that a number of concerns were expressed, but that the Dulin site plan and the manner in which it is to be constructed adequately addressed those concerns.

Finally, the trial court made findings concerning the last *Chrismon* factor, the relationship between the proposed use of the rezoned property and the current uses of the adjacent property. Here, the court found that while the rezoning of Dulin's property to B-1 Conditional Use would allow a different use from that of the adjacent property, such use was restricted to a Neighborhood Convenience Center. Further, it found the development of the Center was governed by a conditional use site plan that was designed to integrate the Center into the neighborhood and insure that it would be in harmony with the existing and proposed residential uses on the surrounding

property. Therefore, the court concluded the relevant rezoning was compatible with the existing and proposed residential uses in the surrounding neighborhood.

We conclude that the trial court's findings were based on competent evidence from which it properly concluded that the Board had made a clear showing of a reasonable basis for the rezoning of Dulin's property. Thus, the plaintiffs' assignment of error on this issue is overruled.

We have considered plaintiffs' remaining assignments of error including the trial court's order taxing plaintiffs with the expert witness fee for Fred Bryant in the amount of $1,000.00 and find them to be without merit. As such, the trial court's order is

Affirmed.

Judges GREENE and JOHN concur.