NO. COA13-1102

NORTH CAROLINA COURT OF APPEALS

Filed:  15 April 2014

DAVITA BISHOP,
    Employee, Plaintiff,

    v.                         North Carolina Industrial
                                     Commission
                                     I.C. No. 884899

INGLES MARKETS, INC.,
    Employer, SELF-INSURED,
    Defendant.

Appeal by defendant-employer from Opinion and Award entered 12 July 2013 by the North Carolina Industrial Commission.  Heard in the Court of Appeals 17 March 2014.

> *Law Office of Gary A. Dodd, by Gary A. Dodd, for plaintiff-appellee.*

> *Northup, McConnell & Sizemore PLLC, by Steven W. Sizemore, for defendant-appellant.*

MARTIN, Chief Judge.

Defendant-employer Ingles Markets, Inc. appeals from an Opinion and Award of the Full Commission of the North Carolina Industrial Commission awarding workers' compensation benefits, attorney's fees, and costs to plaintiff-employee Davita Bishop. For the reasons stated herein, we affirm.

On 30 January 2008, plaintiff slipped and fell on a

recently waxed floor while working in the Ingles deli. After reporting the fall to the store manager, plaintiff sought medical treatment at OneBeacon Healthcare. She explained that she fell and hit her head, and that she was experiencing dizziness as well as pain to her head, lower back, and hip. Plaintiff was diagnosed as having a lower back sprain and a mild concussion. She was also given a note excusing her from work until 5 February 2008.

However, plaintiff's condition did not improve, and she went to Sisters of Mercy Urgent Care on 9 February 2008, complaining of pain in her left hip and lower back. Plaintiff was given a note excusing her from work until 13 February 2008. Plaintiff returned to Sisters of Mercy Urgent Care three times in February, and results of an MRI scan revealed "a slight anterolisthesis at L4-5, degenerative disc disease, spondylosis, facet arthrosis and annular bulging at L4-5 and L5-S1."

After the MRI, it was recommended that plaintiff begin physical therapy and that she return to work with the following restrictions: working for no more than four hours a day; no lifting of anything over ten pounds; and no standing, walking, or sitting for more than twenty minutes at a time. On 11 March 2008, plaintiff returned to work pursuant to these restrictions.

Plaintiff was referred to Dr. Richard Broadhurst and saw him on 29 May 2008 for an evaluation and treatment. On 14 July 2008, plaintiff saw Dr. Broadhurst again because she felt she was being asked to perform tasks at work that she was not physically capable of performing. In response, Dr. Broadhurst issued several work restrictions including, "lifting [no] more than ten pounds, no ladder climbing, no repetitive bending or twisting or forward reaching and to stand and walk to control the pain." On 28 August 2008, Dr. Broadhurst again issued work restrictions for plaintiff. Also in August 2008, plaintiff began taking classes, on days she did not have to work, in a Masters of Divinity program at Gardner-Webb University.

On 26 September 2008, plaintiff returned to OneBeacon and complained of "blackout spells," stating that she had fainted at work the day before. Plaintiff underwent an electroencephalogram ("EEG") which suggested that plaintiff might have partial epilepsy. As a result, plaintiff was referred to Dr. Duff Rardin, who diagnosed plaintiff as possibly having epilepsy. On 5 November 2008, a coworker witnessed plaintiff have a blackout spell. Following this incident, plaintiff underwent an MRI that showed an abnormal signal.

While plaintiff's seizure condition was ongoing, Dr.

Broadhurst, on 15 December 2008, determined that plaintiff had reached maximum medical improvement and assigned plaintiff permanent work restrictions. On 30 December 2008, however, Dr. Broadhurst asked Dr. Rardin if plaintiff's 30 January 2008 fall caused plaintiff's seizures. Dr. Rardin responded that he did not think that the fall caused plaintiff's seizures.

Plaintiff continued to suffer from seizures, so Dr. Rardin completed the medical section of plaintiff's Family Medical Leave ("FMAL") application, noting that plaintiff should not work due to her seizure activity. Dr. Rardin also recommended that plaintiff stop taking classes at Gardner-Webb due to her seizures. Plaintiff stopped working on 15 July 2009 when her FMAL application was approved.

On 29 July 2009, plaintiff was admitted to Mission Hospital for epilepsy monitoring, and the staff was able to observe one of plaintiff's seizures. It was determined that plaintiff's seizures were nonepileptic. Plaintiff, nonetheless, continued to have seizures. Dr. Rardin testified that stressors in a person's life can cause nonepileptic seizures, but he did not state an opinion about whether plaintiff suffered from such stressors. Also, while at Mission Hospital, Dr. C. Britt Peterson, a psychiatrist, saw plaintiff and diagnosed her with

"a major depressive disorder or a possible adjustment disorder with depressed mood and possible conversion disorder."

Eventually, Dr. Rardin recommended that plaintiff see Karen Katz a licensed clinical social worker with a master's degree in social work and psychology from Syracuse University. During the first meeting, Ms. Katz took plaintiff's family history and conducted a clinical assessment. Ms. Katz used anxiety and depression screening tools to diagnose plaintiff with an anxiety disorder and chronic depression that Ms. Katz believed began early in plaintiff's life. Ms. Katz opined that plaintiff's 30 January 2008 fall exacerbated her preexisting anxiety and depression.

The forgoing evidence was presented to the Full Commission at a hearing on 15 November 2011. After the hearing, the Full Commission issued an order on 5 January 2012 reopening the record for receipt of "additional evidence to consist of an orthopedic evaluation and a neuropsychological evaluation." Pursuant to this order, Dr. Stephen David conducted an orthopedic evaluation of plaintiff, and Dr. John Barkenbus conducted a neuropsychological evaluation of plaintiff. Both doctors also reviewed plaintiff's medical records and were deposed.

Dr. Barkenbus, a neuropsychiatry expert, testified that the medical records he reviewed did not indicate that plaintiff suffered from seizures prior to her fall. He also testified that plaintiff's anxiety and depression contributed to her seizure disorder, but that her fall was the initiating event that caused her resulting medical and psychological conditions. Dr. David, an expert in orthopedic surgery, testified that plaintiff's current medical problems prevent her from consistently sustaining gainful employment.

Based on this evidence, the Full Commission awarded plaintiff weekly compensation, medical compensation for her seizures, and attorney's fees. Commissioner Nance dissented from the Full Commission's Opinion and Award because she did not find Ms. Katz's testimony credible. Defendant appeals.

_____

On appeal defendant argues that the Full Commission erred in (1) finding that plaintiff's fall caused her seizure disorder, (2) reopening the record to obtain additional evidence, and (3) awarding plaintiff disability compensation. We disagree.

The North Carolina Supreme Court has clearly stated that "appellate courts reviewing Commission decisions are limited to

reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). However, "[t]he Commission's conclusions of law are reviewed *de novo*." *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 496, 597 S.E.2d 695, 701 (2004).

"Unchallenged findings of fact are presumed to be supported by competent evidence and are binding on appeal." *Allred v. Exceptional Landscapes, Inc.*, __, N.C. App. __, __, 743 S.E.2d 48, 51 (2013). However, when we review the challenged findings of fact, we do not reweigh the evidence because the Commission is the fact finder. *Smith v. First Choice Servs.*, 158 N.C. App. 244, 248, 580 S.E.2d 743, 747, *disc. rev. denied*, 357 N.C. 461, 586 S.E.2d 99 (2003). Instead, we limit our review to determining "whether the record contains any evidence tending to support the finding[s]." *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998), *reh'g denied*, 350 N.C. 108, 532 S.E.2d 522 (1999). As a result, "'[t]he findings of fact of the Industrial Commission are conclusive on appeal when supported by competent evidence, even though there [may] be evidence that would support findings to the contrary.'" *Id.* (quoting *Jones v.*

*Myrtle Desk Co.*, 264 N.C. 401, 402, 141 S.E.2d 632, 633 (1965)). Also, we view the evidence in the record in a light most favorable to the plaintiff, and the "plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence." *Id.*

First, defendant argues that the Full Commission erred in determining that plaintiff's work-related injury caused plaintiff's seizures. In making this argument, defendant relies on *Hawkins v. General Electric Co.*, 199 N.C. App. 245, 249, 683 S.E.2d 385, 389 (2009), for the proposition that when "a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury." Thus, throughout defendant's argument, it challenges several findings of fact, which we will address later, on the basis that the Full Commission could not find these facts based on Ms. Katz's testimony because she is not an expert.

The proposition that only an expert can give competent opinion evidence as to causation when a complicated medical question is involved has its basis in *Click v. Pilot Freight Carriers, Inc.*, 300 N.C. 164, 167, 256 S.E.2d 389, 391 (1980).

In *Click*, the North Carolina Supreme Court stated:

> For an injury to be compensable under the terms of the Workmen's Compensation Act, it must be proximately caused by an accident arising out of and suffered in the course of employment. *There must be competent evidence to support the inference that the accident in question resulted in the injury complained of*, *i.e.*, some evidence that the accident at least might have or could have produced the particular disability in question. The quantum and quality of the evidence required to establish *prima facie* the causal relationship will of course vary with the complexity of the injury itself. There will be many instances in which the facts in evidence are such that any layman of average intelligence and experience would know what caused the injuries complained of. On the other hand, where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury.

*Id.* (emphasis added) (citations omitted) (internal quotation marks omitted).

From this paragraph it is clear that the Court was concerned about the quality of the evidence relied upon by the Industrial Commission when considering complicated causation issues. Therefore, the Commission may make findings of fact based on the testimony of a person that is not an expert, but must rely on competent expert testimony to infer that there is

causation when a complicated medical question is involved.

We will now address each of defendant's challenges to the Full Commission's findings of fact, as well as defendant's contention that there is no causal connection between the work-related injury and plaintiff's seizures.

First, defendant challenges finding of fact 36, which states:

> On September 18, 2009, Dr. Rardin referred Plaintiff to Karen Katz, a licensed clinical social worker, for psychological assistance regarding Plaintiff's non-epileptic seizure disorder. Ms. Katz has a Masters degree in psychology and is providing psychotherapy to Plaintiff. Ms. Katz is qualified and competent to state her opinions as to Plaintiff's psychological condition.

Defendant asserts that the Full Commission erred in finding that Ms. Katz could state her opinions as to plaintiff's psychological condition because Ms. Katz is not qualified to make a diagnosis or offer opinions as to causation. This argument fails.

As stated earlier, the Commission must rely on expert testimony when determining the issue of causation when complicated medical questions are involved. *See id.* Finding of fact 36 has nothing to do with causation; it simply recites Ms. Katz's educational training, the fact that she is treating

plaintiff with respect to her psychological condition, which is within Ms. Katz's training, and that she could properly offer her opinion as to plaintiff's psychological condition.

Next, defendant challenges finding of fact 37, which states:

> Ms. Katz does not administer psychological "testing" but does perform "screening" for conditions such as anxiety. In Plaintiff's case she performed such screening and has assessed Plaintiff with generalized anxiety disorder, and dysthymia, a chronic depression which began early in her life. She also assessed that Plaintiff suffers from an adjustment disorder. This assessment by Ms. Katz is consistent with that of Dr. Peterson, the psychiatrist.

Defendant challenges this finding of fact on the basis that the Commission bolstered Ms. Katz's assessment by saying it was supported by Dr. Peterson. Again, this argument fails.

As stated earlier, when we review a record in a workers' compensation case, we limit our review to whether the record contains any evidence that tends to support the Commission's findings. *See Adams*, 349 N.C. at 681, 509 S.E.2d at 414. In this case, Ms. Katz assessed that plaintiff was depressed. Also in evidence is a discharge summary from Mission Hospital that states that Dr. Peterson diagnosed plaintiff with a depressive disorder. This evidence supports the Commission's finding that

the "assessment by Ms. Katz is consistent with that of Dr. Peterson."

Defendant also questions finding of fact 38, which states:

> It is Ms. Katz' opinion that Plaintiff's fall exacerbated her pre-existing depression and anxiety. During her treatment with Ms. Katz, Plaintiff has made slow, but steady progress. Ms. Katz opined that Plaintiff needs ongoing treatment with medications and psychotherapy and that Plaintiff is currently unable to work "full time."

Defendant contends that the Full Commission could not find that in "Ms. Katz' opinion . . . Plaintiff's fall exacerbated her pre-existing depression and anxiety." As discussed earlier, the Full Commission was permitted to find facts relating to Ms. Katz's testimony as long as the Full Commission did not rely on Ms. Katz's testimony when inferring causation. To the extent that the Full Commission relied upon Ms. Katz's testimony to infer causation, the Full Commission erred. However, in finding of fact 45 the Full Commission stated that it was giving great weight to Dr. Barkenbus's testimony when inferring causation, and Dr. Barkenbus testified that he thought plaintiff's fall was the initiating event that caused several medical and psychological issues.

Finally, defendant challenges findings of fact 44 and 45. Finding of fact 44 states:

> Based upon a preponderance of the evidence, the Full Commission finds that as a consequence of her January 30, 2008 accident, Plaintiff experienced an exacerbation of her underlying psychological condition, including her pre-existing anxiety and depression.

Finding of fact 45 states:

> Based upon a preponderance of the evidence of record, including the opinion of Dr. Barkenbus, which the Full Commission gives great weight, the Full Commission finds that Plaintiff's pre-existing anxiety and depression which were exacerbated by her compensable injury, contributed to her seizure disorder.

Defendant maintains that the Full Commission could not have found a preexisting psychological condition because no expert diagnosed plaintiff with a psychological condition, and no medical expert testified as to the exacerbation of any preexisting condition.

This argument challenges findings of fact, as well as the Full Commission's inference of causation. First, we only need to find some evidence in the record that supports the Full Commission's findings of fact. *See Adams*, 349 N.C. at 681, 509 S.E.2d at 414. Dr. Barkenbus, who was tendered as a medical expert, stated that in his report he was concerned with "some level of panic anxiety prior to [plaintiff's] fall, [and that] [t]here was more ongoing depression in the aftermath of her

fall." Thus, there is evidence in the record to support the finding that plaintiff suffered from anxiety before her fall.

Second, Dr. Barkenbus testified that he thought the fall was the initiating event that caused several medical and psychological issues that affected plaintiff's ability to work. The Full Commission stated in finding of fact 45 that it was giving great weight to Dr. Barkenbus's testimony. Therefore, there is expert medical testimony in the record that the Full Commission relied on in determining the causal connection between plaintiff's fall and her current medical conditions. *See Click*, 300 N.C. at 167, 256 S.E.2d at 391. As a result, the Full Commission properly addressed the issue of causation.

Next, we address the Full Commission's order reopening the record. When a party appeals a deputy commissioner's opinion and award to the Full Commission, it may "if good ground be shown therefor, reconsider the evidence, receive further evidence, rehear the parties or their representatives, and, if proper, amend the award." N.C. Gen. Stat. § 97-85(a) (2013). As a result, this statute confers plenary powers to the Full Commission to receive additional evidence, rehear the parties, amend the award, and reconsider the evidence. *Lynch v. M. B. Kahn Constr. Co.*, 41 N.C. App. 127, 130, 254 S.E.2d 236, 238,

*disc. rev. denied*, 298 N.C. 298, 259 S.E.2d 914 (1979). Therefore, the Full Commission's determination relating to one of its plenary powers "will not be reviewed on appeal absent a showing of manifest abuse of discretion," *id.* at 131, 254 S.E.2d at 238, and an abuse of discretion occurs when a determination "is so arbitrary that it could not have been the result of a reasoned decision." *Porter v. Fieldcrest Cannon, Inc.*, 133 N.C. App. 23, 26, 514 S.E.2d 517, 520 (1999).

Defendant does not argue that the Full Commission's decision to reopen the record was an unreasoned decision. Instead, defendant seems to argue that the Full Commission's decision was unfair because it gave the plaintiff a second opportunity to prove her case. Such an argument fails to show that the Full Commission abused its discretion, and we will not review its determination to reopen the record.

Finally, defendant argues that the Full Commission should not have awarded plaintiff temporary total indemnity compensation and medical compensation because plaintiff failed to provide evidence that satisfies the test in *Russell v. Lowes Product Distrib.*, 108 N.C. App. 762, 425 S.E.2d 454 (1993). We disagree.

Under the Workers' Compensation Act, an employee is

disabled when their earning capacity has been impaired. *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 434, 342 S.E.2d 798, 804 (1986), *appeal after remand*, 86 N.C. App. 227, 356 S.E.2d 801 (1987). Thus, the employee must show that "he is unable to earn the same wage he had earned before the injury, either in the same employment or in other employment." *Russell*, 108 N.C. App. at 765, 425 S.E.2d at 457.

The employee may meet this burden in one of four ways:

> (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.

*Id.*

In this case, the Full Commission concluded that plaintiff had satisfied the *Russell* test under either part one or part three. The Full Commission made the following unchallenged finding of fact:

> [I]t would have been futile for Plaintiff to

look for suitable employment due to her limited and past relevant vocational history of working primarily as a deli cook which required prolonged standing and lifting up to 50 pounds, her limited vocation skills associated mainly with the type of work she is currently unable to perform . . . her current seizure disorder, in combination with her work related, severe permanent restrictions assigned by Dr. Broadhurst of no lifting more than ten pounds, sitting or resting up to ten minutes each hour, no ladder climbing, minimal stair climbing and no repetitious twisting or forward trunk reaching, and her other physical limitations due to severe pain, needing a cane to ambulate, her need for multiple medications and her non-work related medical conditions, including a stroke and heart attack following her injury.

This finding of fact supports the Full Commission's conclusion that it would have been futile for plaintiff to search for employment. *See Barrett v. All Payment Servs., Inc.*, 201 N.C. App. 522, 527, 686 S.E.2d 920, 924 (2009) (holding that the plaintiff had satisfied part three of the *Russell* test because the Commission found "it would be futile for [employee] to seek employment, given his advanced age, his prior work history, his pre-existing conditions, his severely debilitating back condition due [to] his current work related [sic] injury as well as non-work related [sic] causes and his work related [sic] physical restrictions" (alterations in original)), *writ of supersedeas and disc. rev. denied*, 363 N.C. 853, 693 S.E.2d 915

(2010).

In conclusion, for the reasons stated above, we affirm the Opinion and Award of the Full Commission.

Affirmed.

Judges McGEE and CALABRIA concur.