NO. COA13-834

NORTH CAROLINA COURT OF APPEALS

Filed:  5 August 2014

E. RAY ETHERIDGE, FRED G.
ETHERIDGE, and MARY KATHERINE R.
ETHERIDGE,
     Plaintiffs

     v.                                    Currituck County
                                           No. 12 CVS 38
COUNTY OF CURRITUCK; THE CURRITUCK
COUNTY BOARD OF COMMISSIONERS; and
JOHN D. RORER, MARION GILBERT, O.
VANCE AYDLETT, JR., H.M. PETREY,
J. OWEN ETHERIDGE, PAUL MARTIN,
and S. PAUL O'NEAL as members of
the CURRITUCK COUNTY BOARD OF
COMMISSIONERS,
     Defendants


     Appeal by plaintiffs and defendants from order entered 25

April 2013 by Judge Walter H. Godwin, Jr. in Currituck County

Superior Court.  Heard in the Court of Appeals 22 January 2014.


     *Currin & Currin, by Robin T. Currin and George B. Currin,
     for plaintiffs.*

     *Currituck  County  Attorney  Donald  I.  McRee,  Jr.,  for
     defendants.*


     CALABRIA, Judge.


     Currituck County ("the County") and the Currituck County

Board of Commissioners ("the Board") (collectively "defendants")

appeal from the portion of the trial court's order granting

summary judgment in favor of E. Ray Etheridge, Fred G. Etheridge, and Mary Katherine R. Etheridge (collectively "plaintiffs") as to plaintiffs' claim of illegal spot zoning. Plaintiffs appeal the portion of the trial court's order denying their request for attorney's fees and costs pursuant to N.C. Gen. Stat. § 6-21.7 (2013). We affirm.

## I. Background

This appeal concerns a dispute over a 1.1 acre parcel of land ("the property") owned by Currituck Grain, Inc. ("Currituck Grain") in the town of Shawboro in Currituck County, North Carolina. Prior to 5 December 2011, the property was zoned agricultural under Currituck County's Unified Development Ordinance ("the UDO"). The adjoining parcels of land on three sides of the property were also zoned agricultural, and the parcel on the remaining side of the property was zoned general business.

Currituck Grain entered into a contract with Daniel Clay Cartwright ("Cartwright") by which Cartwright would purchase the property to establish what he called a "recycling center," which would handle, stockpile, and sell scrap metal and materials, rock, mulch, concrete, and dirt. Cartwright's proposed use was not permitted in an agricultural zoning

district, but it was permitted in a heavy manufacturing zoning district with a special use permit.

On 23 September 2011, Cartwright submitted an application to have the property rezoned to Conditional District – Heavy Manufacturing. The County Planning Board ("the Planning Board") reviewed Cartwright's rezoning application ("the application") and recommended that it should be denied because, *inter alia*, the proposed use was inconsistent with the current rural zoning classification and was inconsistent with the County's comprehensive land use plan. The Board then conducted a hearing regarding the application on 5 December 2011. At the conclusion of the meeting, the Board voted 6-1 to approve the application.

On 25 January 2012, plaintiffs filed a complaint against defendants in Currituck County Superior Court seeking to have the rezoning of the property invalidated. Plaintiffs' complaint included claims of illegal spot zoning, arbitrary and capricious rezoning, and violation of due process. Plaintiffs sought a preliminary and permanent injunction against the rezoning as well as attorney's fees and costs pursuant to N.C. Gen. Stat. § 6-21.7. On 23 March 2012, plaintiffs filed an amended complaint which added an additional claim for violation of N.C. Gen. Stat. § 153A-341 and the UDO. Plaintiffs then filed a motion for

summary judgment as to all claims other than their claim for a preliminary and permanent injunction. After a hearing, the trial court entered an order granting summary judgment in favor of plaintiffs as to their claim for illegal spot zoning and denying plaintiffs' request for attorney's fees. The trial court also denied plaintiffs' motion for summary judgment as to their remaining claims. Plaintiffs and defendants each appeal.

## II. Jurisdiction

As an initial matter, we note that this appeal is interlocutory because the trial court's order did not resolve all of plaintiffs' claims since it explicitly denied both parties summary judgment as to those remaining claims and there is no subsequent final disposition of those claims in the record. Appeal from an interlocutory order is proper if

> (1) the order is final as to some claims or parties, and the trial court certifies pursuant to N.C.G.S. § 1A-1, Rule 54(b) that there is no just reason to delay the appeal, or (2) the order deprives the appellant of a substantial right that would be lost unless immediately reviewed.

*Myers v. Mutton*, 155 N.C. App. 213, 215, 574 S.E.2d 73, 75 (2002). In the instant case, the trial court's order entered final judgments as to plaintiffs' claims for illegal spot zoning and attorney's fees and certified pursuant to Rule 54(b) that

there was no just reason to delay appeal of those claims. Accordingly, this appeal is properly before us. *See Sharpe v. Worland*, 351 N.C. 159, 162, 522 S.E.2d 577, 579 (1999) ("When the trial court [properly] certifies its order for immediate appeal under Rule 54(b), appellate review is mandatory.").

### III. Defendants' Appeal – Spot Zoning

Defendants' sole argument on appeal is that the trial court erred by granting summary judgment in favor of plaintiffs as to plaintiffs' claim for illegal spot zoning. We disagree.

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007)).

> Spot zoning is defined, in pertinent part, as a zoning ordinance or amendment that "singles out and reclassifies a relatively small tract owned by a single person and surrounded by a much larger area uniformly zoned, so as to . . . relieve the small tract from restrictions to which the rest of the area is subjected." *Blades v. City of Raleigh*, 280 N.C. 531, 549, 187 S.E.2d 35, 45 (1972), quoted in *Chrismon* [*v. Guilford Cty.*], 322 N.C. [611,] 627, 370 S.E.2d [579,] 588-89 [(1988)] The practice [of spot

zoning] may be valid or invalid, depending on the facts of the specific case. *Chrismon*, 322 N.C. at 626, 370 S.E.2d at 588. In order to establish the validity of such a zoning ordinance, the finder of fact must answer two questions in the affirmative: (1) did the zoning activity constitute spot zoning as our courts have defined that term; and (2) if so, did the zoning authority make a clear showing of a reasonable basis for the zoning. *Id*. at 627, 370 S.E.2d at 589.

*Good Neighbors of S. Davidson v. Town of Denton,* 355 N.C. 254, 257-58, 559 S.E.2d 768, 771 (2002) (footnotes omitted).

In the instant case, defendants conceded at oral arguments that the rezoning at issue constituted spot zoning as defined by our Supreme Court. However, they still contend that summary judgment in favor of plaintiffs was inappropriate because the undisputed evidence is that there was a reasonable basis for the rezoning. Defendants are mistaken.

In order to determine whether there was a reasonable basis for a spot zoning, this Court considers the following factors:

(1) "the size of the tract in question"; (2) "the compatibility of the disputed zoning action with an existing comprehensive zoning plan"; (3) "the benefits and detriments resulting from the zoning action for the owner of the newly zoned property, his neighbors, and the surrounding community; and" (4) "the relationship between the uses envisioned under the new zoning and the uses currently present in adjacent tracts." *Chrismon*, 322 N.C. at 628, 370 S.E.2d at 589. With these factors in mind, "the

> criteria are flexible, and the specific analysis used depends on the facts and circumstances of a particular case." *Id.*

*Childress v. Yadkin Cty.*, 186 N.C. App. 30, 37, 650 S.E.2d 55, 61 (2007).

In the instant case, the first two factors, the size of the tract and the compatibility of the rezoning with the County's comprehensive plan, clearly weigh against the reasonableness of the rezoning. The rezoned property is only 1.1 acres in size and, as noted by the Planning Board, the rezoning is inconsistent with the County's comprehensive plan. In their brief, defendants do not dispute that these factors should weigh against the rezoning's reasonableness. Instead, defendants argue that, consistent with *Chrismon*, the third and fourth factors support a determination that there was a reasonable basis for the spot zoning. *See Chrismon*, 322 N.C. at 633-34, 370 S.E.2d at 592 ("[W]e find that, because of the quite substantial benefits created for the surrounding community by the rezoning and because of the close relationship between the likely uses of the rezoned property and the uses already present in the surrounding tracts, there was a clear showing of a reasonable basis for the spot zoning in this instance.").

A. Benefits vs. detriments

Defendants first contend that the rezoning would create substantial benefits for the community. Our Supreme Court has stated that the analysis of this factor "is expressly limited to examining the ordinance's beneficial and detrimental effects on the property owner, his neighbors, and the surrounding community." *Good Neighbors*, 355 N.C. at 259, 559 S.E.2d at 772.

> One example of a qualifying benefit is a showing that neighboring property values would increase as a result of the rezoning. Other benefits previously recognized by the Court, as illustrated in *Chrismon*, include: (1) a showing of broad-based support for the proposed use of the property, and (2) a showing that many of the surrounding landowners were likely to use the expanded services offered by the property owner seeking the zoning change.

*Id.* at 259-60, 559 S.E.2d at 772.

In the instant case, defendants argue that the rezoning will be beneficial because the proposed recycling center would (1) create three to four jobs; (2) allow for dilapidated structures on the property to be rehabilitated; (3) allow county citizens to dispose of their unwanted metals; and (4) make use of a railroad siding. In addition, defendants note that Commissioner J. Owen Etheridge ("Commissioner Etheridge") stated that he witnessed support for the rezoning from twenty-eight of

thirty-three attendees at a preliminary community meeting regarding Cartwright's application.

Many of the benefits from the rezoning proposed by defendants are not supported by any evidence presented at the public hearing. For instance, there was no evidence presented that the surrounding community would be particularly likely to use the recycling center or that there was a specific need for a recycling center in the property's location. In *Mahaffey v. Forsyth County*, this Court held that a spot zoning to facilitate the establishment of an automobile parts store could not be said to benefit the community because "auto parts are a common and easily obtainable product and, if such a retail establishment were said to be 'beneficial to a rural community,' then virtually any type of business could be similarly classified." 99 N.C. App. 676, 683, 394 S.E.2d 203, 208 (1990), *aff'd per curiam*, 328 N.C. 323, 401 S.E.2d 365 (1991). The recycling center in the instant case likewise provides only a generalized benefit that has no specific connection to the surrounding rural community.

Commissioner Etheridge's statement that he personally witnessed significant support for the rezoning at a preliminary public hearing is also not supported by any evidence in the

record. Moreover, even assuming, *arguendo*, that the statement was accurate, it still fails to establish that there was substantial community support for the rezoning. Commissioner Etheridge's statement acknowledges that multiple individuals were opposed to the rezoning at the meeting he attended, and at the actual public meeting where the rezoning was considered, the vast majority of individuals who addressed the rezoning spoke in opposition to it. Thus, there was not the type of overwhelming public support for the rezoning that would be necessary to establish that the rezoning was beneficial to the surrounding community. *Cf. Chrismon*, 322 N.C. at 630, 370 S.E.2d at 590 (benefit of spot zoning demonstrated when eighty-eight local residents signed a petition supporting the rezoning, multiple members of the community spoke in favor of the rezoning, and only one property owner spoke in opposition to it).

In addition, two real estate professionals who spoke at the hearing stated that they believed that the proposed recycling center would decrease property values both in the immediate vicinity of the property and in the Shawboro community as a whole. There was no evidence to the contrary presented during the meeting. Finally, both Currituck County Sheriff Susan Johnson ("Sheriff Johnson") and a representative from the North

Carolina Department of Cultural Resources ("the DCR") submitted letters to the Board expressing their concerns with the rezoning. Sheriff Johnson was concerned because businesses similar to the proposed recycling center had experienced increases in crime and other suspicious activity, and the DCR was concerned that the proposed recycling center would adversely affect two nearby historic properties.

In light of this evidence, defendants have failed to make a clear showing that the benefits of the rezoning outweighed its detriments. Consequently, this factor also weighs against the reasonableness of the rezoning.

B. Relationship of Uses

Defendants next argue that the proposed uses under the rezoning would be consistent with the uses allowed or occurring on adjacent properties. The *Chrismon* Court stated the following regarding this factor:

> In determining whether a zoning amendment constitutes spot zoning, the courts will consider the character of the area which surrounds the parcel reclassified by the amendment. *Most likely to be found invalid is an amendment which reclassifies land in a manner inconsistent with the surrounding neighborhood.*

> 1 R. Anderson, *American Law of Zoning* § 5.16 at 383 (3d ed. 1986) (emphasis added). One court has described the evil to be avoided as "an attempt to *wrench* a single small lot from its environment and give it a new rating *which disturbs the tenor of the neighborhood.*" *Magnin v. Zoning Commission*, 145 Conn. 26, 28, 138 A. 2d 522, 523 (1958) (emphasis added).

*Chrismon*, 322 N.C. at 631, 370 S.E.2d at 591. The Court went on to note that "significant disturbances such as the rezoning of a parcel in an old and well-established residential district to a commercial or industrial district would clearly be objectionable" under this factor. *Id.* In *Budd v. Davie County*, this Court cited this language in concluding that a spot rezoning from residential-agricultural to industrial to permit the installation of a sand dredging operation "would destroy the tenor of the quiet residential and agricultural neighborhood." 116 N.C. App. 168, 178, 447 S.E.2d 449, 455 (1994). Similarly, in *Good Neighbors*, our Supreme Court held that a spot rezoning to permit chemical storage in an area "specifically zoned for farms and residences" was unreasonable under this factor. 355 N.C. App. at 262, 559 S.E.2d at 773.

In the instant case, the property was rezoned from agricultural, which is the least intense residential district under the UDO, to heavy manufacturing, which was the most

intense industrial district.  Thus, like the spot zonings found to be unreasonable in *Budd* and *Good Neighbors*, the rezoning in this case impermissibly "wrench[es] a single small lot from its environment and give[s] it a new rating which disturbs the tenor of the neighborhood." *Chrismon*, 322 N.C. at 631, 370 S.E.2d at 591 (emphasis omitted).

However, defendants contend that the rezoning should still be considered reasonable pursuant to this factor because (1) the previous use of the property, a granary, was in greater conflict with the surrounding properties than the proposed recycling center; and (2) the County may still place limitations upon the property that would bring it into harmony with the surrounding properties when Cartwright seeks a required special use permit. Defendants' first contention is immaterial, because previous uses of the rezoned property are not considered as part of this factor.  *See Good Neighbors*, 355 N.C. at 261, 559 S.E.2d at 773 (This factor consists of "evaluating the relationship between the uses envisioned under the new zoning and *the uses currently present in adjacent tracts . . . ."* (emphasis added)).

In support of its second contention, defendants cite *Purser v. Mecklenburg County*, 127 N.C. App. 63, 488 S.E.2d 277 (1997). In *Purser*, the property at issue was rezoned from residential to

a conditional-use district to allow for a "Neighborhood Convenience Center," which would provide retail establishments that were consistent with the daily needs of the nearby residents. *Id.* at 65, 488 S.E.2d at 278. This Court found that under those circumstances, the "relationship of uses" factor weighed in favor of the reasonableness of the spot zoning because "the development of the Center was governed by a conditional use site plan that was designed to integrate the Center into the neighborhood and insure that it would be in harmony with the existing and proposed residential uses on the surrounding property." *Id.* at 70-71, 488 S.E.2d at 282.

*Purser* is distinguishable from the instant case. Unlike in *Purser*, defendants in the instant case have presented no evidence that the recycling center has been designed to be integrated into the surrounding area. The only condition on the rezoning cited by defendants in their brief is an eight-foot fence which is to be installed around the property. However, defendants fail to adequately explain how this fence will significantly diminish the impact of the recycling center on surrounding properties. Consequently, we conclude that defendants have failed to clearly show that the proposed

recycling center would be consistent with the uses of adjoining properties.

Ultimately, defendants have failed to meet their burden to make a clear showing pursuant to any of the *Chrismon* factors that the rezoning was a reasonable spot zoning. Accordingly, the trial court properly granted summary judgment in favor of plaintiffs because the rezoning constituted illegal spot zoning. Defendants' argument is overruled.

### IV.  Plaintiffs' Appeal – Attorney's Fees

Plaintiffs' sole argument on appeal is that the trial court erred by denying their request for attorney's fees. Specifically, plaintiffs contend that defendant's illegal spot zoning constituted an abuse of discretion and that, as a result, N.C. Gen. Stat. § 6-21.7 required the trial court to award attorney's fees as a matter of law. We disagree.

Ordinarily, the "recovery of attorney's fees, even when authorized by statute is within the trial court's discretion and will only be reviewed for an abuse of that discretion." *Martin Architectural Prods., Inc. v. Meridian Constr. Co.*, 155 N.C. App. 176, 182, 574 S.E.2d 189, 193 (2002). However, "[w]e review a trial court's decision whether to award *mandatory* attorney's fees *de novo.*" *Willow Bend Homeowners Ass'n v.*

*Robinson*, 192 N.C. App. 405, 418, 665 S.E.2d 570, 578 (2008) (emphasis added).

In the instant case, plaintiffs sought to recover attorney's fees pursuant to N.C. Gen. Stat. § 6-21.7, which states:

> In any action in which a city or county is a party, upon a finding by the court that the city or county acted outside the scope of its legal authority, the court may award reasonable attorneys' fees and costs to the party who successfully challenged the city's or county's action, provided that if the court also finds that the city's or county's action was an abuse of its discretion, the court shall award attorneys' fees and costs.

N.C. Gen. Stat. § 6-21.7. This statute permits a party that successfully challenges an action by a city or county to recover attorney's fees if the trial court makes certain findings of fact. When the court finds *only* that the city or county acted outside the scope of its legal authority, the award of attorney's fees is discretionary. *See Brock and Scott Holdings, Inc. v. Stone*, 203 N.C. App. 135, 137, 691 S.E.2d 37, 38 (2010) ("[T]he use of [the word] 'may' generally connotes permissive or discretionary action and does not mandate or compel a particular act."). However, if the court additionally finds that the city's or county's action constituted an abuse of discretion, then the award of attorney's fees is mandatory. *See Internet E.,*

*Inc. v. Duro Communications, Inc.*, 146 N.C. App. 401, 405-06, 553 S.E.2d 84, 87 (2001) ("The word 'shall' is defined as 'must' or 'used in laws, regulations, or directives to express what is mandatory.'").

In the instant case, the trial court properly determined that the rezoning constituted illegal spot zoning and thus that the County acted outside the scope of its legal authority. *See Alderman v. Chatham County*, 89 N.C. App. 610, 616, 366 S.E.2d 885, 889 (1988) ("[U]nless there is a clear showing of a reasonable basis, spot zoning is beyond the authority of the county or municipality." (internal quotations and citation omitted)). However, the court did not find that the County's action was an abuse of discretion and instead ordered both parties to be "responsible for their own attorney's fees and costs." Plaintiffs argue that the trial court's failure to award them attorney's fees was error because (1) the County's action was necessarily an abuse of discretion as a matter of law; or (2) in the alternative, that the record supports a determination that the County abused its discretion. Plaintiffs are mistaken.

Plaintiffs first contend that "illegal spot zoning is always outside the scope of the County's legal authority and

always an abuse of discretion and, therefore, once it is determined that illegal spot zoning occurred, the Trial Court is required to award attorney's fees." In support of this argument, plaintiffs rely on the principle noted in this Court's opinion in *Summers v. City of Charlotte*, which states, in relevant part:

> Local governments have been delegated the power to zone their territories and restrict them to specified purposes by the General Assembly. *Zopfi v. City of Wilmington*, 273 N.C. 430, 434, 160 S.E.2d 325, 330 (1968). This authority "is subject both to the . . . limitations imposed by the Constitution and to the limitations of the enabling statute." *Id*. Within those limitations, the enactment of zoning legislation "is a matter within the discretion of the legislative body of the city or town." *Id*.

149 N.C. App. 509, 517, 562 S.E.2d 18, 24 (2002). Plaintiffs contend that since local governments only have discretion to enact zoning legislation when they are acting within the limitations imposed by the Constitution and by statute, any action which exceeds those limitations must also exceed the discretionary authority of the local government such that the action constitutes an abuse of discretion as a matter of law, which in turn requires an automatic award of attorney's fees.

Plaintiffs' contention cannot be reconciled with the plain language of N.C. Gen. Stat. § 6-21.7. Pursuant to that statute,

a "finding by the court that the city or county acted outside the scope of its legal authority," such as a finding that a local government engaged in illegal spot zoning, does not, in and of itself, trigger the mandatory award of attorney's fees. N.C. Gen. Stat. § 6-21.7. Instead, the trial court must *also* explicitly consider and "find[] that the city's or county's action was an abuse of its discretion" in order to trigger the mandatory award of fees. *Id*. Plaintiffs' proposed interpretation of the statute would collapse these two distinct required inquiries into one, essentially deleting a portion of the statute. Such an interpretation is impermissible because our Courts "have no power to add to or subtract from the language of the statute." *Zaldana v. Smith*, ___ N.C. App. ___, ___, 749 S.E.2d 461, 463 (2013) (internal quotation and citation omitted), *disc. rev. denied*, ___ N.C. ___, ___ S.E.2d ___ (2014).

"[A]n abuse of discretion occurs when a determination 'is so arbitrary that it could not have been the result of a reasoned decision.'" *Bishop v. Ingles Mkts., Inc.*, ___ N.C. App. ___, ___, 756 S.E.2d 115, 121 (2014) (quoting *Porter v. Fieldcrest Cannon, Inc.*, 133 N.C. App. 23, 26, 514 S.E.2d 517, 520 (1999)). Contrary to plaintiffs' argument, the language of

N.C. Gen. Stat. § 6-21.7 clearly indicates that the General Assembly believed that a local government could erroneously act outside the scope of its legal authority but yet not be acting in a manner "so arbitrary that it could not have been the result of a reasoned decision." *Id.* Thus, we conclude that under the plain language of the statute, the trial court is always required to separately determine both (1) that a local government acted outside the scope of its legal authority; and (2) that the act in question constituted an abuse of discretion before the court is required to award attorney's fees. Plaintiffs' proposed interpretation to the contrary must be rejected.

Nonetheless, plaintiffs still argue that "the undisputed facts of the case sub judice are particularly egregious and further demonstrate the County's abuse of discretion in approving the rezoning." Specifically, plaintiffs note that during the hearing which considered the rezoning request, concerns with the proposed rezoning were raised by (1) the Planning Board, because the rezoning was inconsistent with the comprehensive plan; (2) Sheriff Johnson, because the proposed use would potentially require the hiring of a new law enforcement officer; (3) the DCR, which was concerned that the

proposed use would have negative effects on two nearby historic properties; and (4) nearby landowners. Plaintiffs also contend that the record reflects that the Board failed to properly consider and analyze the relevant spot zoning reasonableness factors after being informed about those factors by the County Attorney. Plaintiffs argue that the Board's approval of the rezoning in these circumstances irrefutably demonstrates an abuse of discretion.

However, the evidence cited by plaintiffs was not the only information before the Board. Cartwright explained the benefits that the recycling center would bring to the community and informed the Board how he expected the center would operate, including the steps he would take to limit the center's impact on nearby landowners. In addition to Cartwright, three individuals spoke in favor of the rezoning at the public hearing. Two of these individuals specifically referenced prior uses of the property and suggested that the recycling center would not impact the area surrounding the property in a materially different manner than these prior uses. The third individual supported the rezoning because he felt there was a need for industry in Currituck County.

Based upon the information presented during the hearing, Commissioner Etheridge made the following motion in favor of the rezoning:

> Mr. Chairman, since I live in the Shawboro community and I will be affected by this one way or the other, I am going to make a motion to recommend approval of this. And I do so citing that it is consistent with the land use plan, and the request is reasonable and in the public interest. It also promotes orderly growth and development in our community, and it follows the long history of industrial uses that have been in this area.
>
> One, it's a rail siding with three rail spurs, the largest one in Currituck County. It has had a cotton gin, an asphalt plant, two different fertilizer plants, agricultural chemical storage, granaries, as I said to [inaudible], lime off--they offloaded lime there. DOT has--NCDOT, DOT, has used this property to offload rail cars of highway maintenance materials. Various contracting firms have offloaded rail cars at this site. North Carolina Power has, on occasion, offloaded large electrical equipment here. So it has a history of being an industrial area, or the railroad would have never put the siding there to begin with.
>
> So with that, and the fact that there was overwhelming support at the community meeting--I think the report was thirty-three people there, twenty-eight supported it. Here tonight it appears to be somewhat overwhelming support from the general community. And the general community we're talking about is Currituck and Shawboro in particular. And I look out here and I see

> people from Shawboro and throughout the county. And I think it is time that we take the foot of government off the throat of starting businesses in this county and we do what we can to make sure.
>
> Now, in this additional zoning permit, I would also add that we add opaque fencing to be determined height-wise, and a special use permit that every factor that the staff and Mr. Cartwright can work on to mitigate any possible negative impacts be looked at and then addressed at the special use permit.

This statement is the only information on the record regarding the Board's reasoning for the approval of the rezoning, which occurred shortly after Commissioner Etheridge's motion was made. The motion demonstrates that the Board considered most of the *Chrismon* reasonableness factors prior to approving the rezoning. Commissioner Etheridge specifically cited his belief that the rezoning was consistent with the UDO, noted benefits to the community such as economic growth and significant community support, and discussed how the newly zoned property would be consistent with surrounding property uses, including how the recycling center's impact would be mitigated through the special use permit process. While we have determined that Commissioner Etheridge's reasoning was insufficient to meet the County's legal burden of making "a clear showing of a reasonable basis for the zoning," *Good Neighbors*, 355 N.C. at 258, 559 S.E.2d at

771, we cannot conclude that the Board's reliance on the information cited by Commissioner Etheridge was so unreasonable that the legislative act of the rezoning "could not have been the result of a reasoned decision." *Bishop*, ___ N.C. App. at ___, 756 S.E.2d at 121. Accordingly, the trial court did not err by determining that the rezoning was not an abuse of discretion by the County.[1] Since there was sufficient evidence for the trial court to decide that the rezoning was not an abuse of discretion, there was also sufficient evidence for the court, in its discretion, to deny plaintiffs' motion for attorney's fees. Thus, we conclude the trial court did not abuse its discretion by denying that motion. This argument is overruled.

## V. Conclusion

The trial court properly awarded summary judgment in favor of plaintiffs for their illegal spot zoning claim because there was no genuine issue of material fact as to whether the rezoning constituted illegal spot zoning. Pursuant to N.C. Gen. Stat. § 6-21.7, if the trial court finds only that a local government acted outside the scope of its authority, the award of attorney's fees is discretionary. However, if the trial court

---

[1] Although the trial court did not explicitly find that the County did not abuse its discretion by enacting the rezoning, such a finding is implicit in the court's decision to have both parties bear their own costs and attorney's fees.

additionally finds that the local government's action was an abuse of discretion, the award of attorney's fees becomes mandatory. Since the court properly determined that the County did not abuse its discretion when it approved the illegal spot zoning of the property, it was not required to award attorney's fees to plaintiffs. The trial court did not abuse its discretion by ordering the parties to pay their own attorney's fees and costs. The trial court's order is affirmed.

Affirmed.

Judges HUNTER, Robert C. and GEER concur.